# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2787

_____

Sherrie A. Farley,                      *

                *

        Appellee,             *

                *

      v.               *   Appeal from the United States District

                *   Court for the Western District of

Arkansas Blue Cross and Blue     *   Arkansas.

Shield, A Mutual Insurance      *

Company,                  *

                *

        Appellant.         *

_____

Submitted: May 13, 1998
Filed: June 30, 1998

_____

Before BEAM, LOKEN, and MURPHY, Circuit Judges.

_____

BEAM, Circuit Judge.

Sherrie A. Farley brought this action to review the denial of medical benefits under an employee benefits plan, which is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B) (ERISA). The district court held that the claims administrator, Arkansas Blue Cross and Blue Shield (Blue Cross), abused its discretion in denying Farley's claim for benefits. Blue Cross appeals that determination. After a review of the record, we reverse.

## I.    BACKGROUND

On October 19, 1994, Farley saw Dr. Greg Booker for a routine gynecological exam.  Dr. Booker detected an enlarged uterus, which he recorded as "consistent with probably uterine leiomyomata."[1]  He also recorded an assessment of polymenorrhea (abnormally frequent menstruation).  Dr. Booker did not recommend any immediate treatment, but noted that Farley may be a candidate for hormonal treatment "[i]f this continues to bother her or it worsens."

Approximately two weeks later, Farley became eligible for health insurance under a group plan (the Plan) that her spouse's employer, International Paper Company, established for its employees and their eligible dependants.  Blue Cross insures and administers the Plan.  The Plan excludes coverage for the "[t]reatment of pre-existing conditions or diseases," which is defined as "a condition or disease which causes symptoms, before the effective date, that would have caused an ordinarily prudent person to seek diagnosis, care, or treatment."

In March of 1995, Farley returned to Dr. Booker, complaining of significant cramping and pain.  Dr. Booker discovered that her uterus was enlarged "to about twelve weeks size and tender consistent with uterine leiomyomata."  After discussing the treatment options with Farley, Dr. Booker performed a total abdominal hysterectomy and right salpingo-oophorectomy (removal of a uterine tube and ovary).  Dr. Booker subsequently submitted an insurance form to Blue Cross, diagnosing Farley as having polymenorrhea, dysmenorrhea (painful menstruation), and uterine leiomyomata.  Dr. Booker did not mention, however, Farley's postoperative diagnosis

---

[1]Uterine leiomyomata is "characterized by the development of multiple, sharply circumscribed, unencapsulated, gray-white tumors, which are firm, usually round, and show a whorled pattern on cut section."  Dorland's Illustrated Medical Dictionary 911 (28th ed. 1994).

of two additional conditions, pelvic endometriosis (a tissue condition) and adenomyosis.[2]  Farley filed a timely claim for $5,819.61, representing the medical expenses incident to the surgery.

Blue Cross denied Farley's claim for the reason that the medical expenses were for a preexisting condition.   Farley appealed the initial denial to a Blue Cross Appeals Coordinator, who denied coverage after reviewing Farley's medical records, which included Dr. Booker's notes from the March 1995 consultation.  Those notes state that Farley "has a long history of heavy vaginal bleeding with periods lasting several days and significant dysmenorrhea and pain radiating through to her back."  The Appeals Coordinator also found support for the benefits denial in the insurance form that was submitted by Dr. Booker, which stated that he had treated Farley for this condition prior to the insured period.  The Appeals Coordinator invited Farley to submit any additional medical records to show that Farley's condition was not preexisting.

On November 1, 1995, Dr. Booker submitted an additional letter which stated, "[a]lthough Mrs. Farley had experienced symptoms prior to her effective date, these had not been disabling to her and affecting her ability to perform her duties at work." After receiving that letter, the Appeals Coordinator reviewed Dr. Booker's office notes from the October 1994 consultation and again denied Farley's claim, again inviting Farley to submit any additional information.

Farley then filed this cause of action in state court.  Blue Cross removed the case to federal court based on federal preemption under ERISA.  The district court properly analyzed the case under 29 U.S.C. § 1132(a)(1)(B), as an action to recover benefits pursuant to the terms of a qualifying plan.  After reviewing the stipulated administrative

---

[2]Adenomyosis is "a benign condition characterized by endometrial glands and stroma within the myometrium, accompanied by hypertrophy of the myometrium." Dorland's Illustrated Medical Dictionary 28 (28th ed. 1994)

record, the district court entered judgment for Farley, concluding that Blue Cross abused its discretion in denying Farley's claim for medical benefits. On appeal, Blue Cross asserts that the district court erred in substituting its own judgment for that of Blue Cross and erred in finding that Blue Cross's decision was unreasonable.

## II. DISCUSSION

### A. Standard of Review

The district court reviewed Blue Cross's decision for an abuse of discretion. Nonetheless, Farley now asks that we review the decision under a more stringent standard. We decline to do so.

We review de novo the district court's determination of the appropriate standard of review. See Woo v. Deluxe Corp., 1998 WL 261176, *2 (8th Cir. 1998). Where a plan provides the administrator with "discretionary authority to determine eligibility for benefits," we examine the administrator's decision for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The parties do not dispute that the Plan provides this discretionary authority.[3] Farley, however, now asserts that we should accord Blue Cross less deference because its desire to maintain competitive insurance rates encourages it to deny claims, thus creating an inherent conflict of interest. See id. at 115 (stating that if a fiduciary "is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion") (quotation omitted).

---

[3]The Plan provides that Blue Cross "shall have authority and full discretion to determine all questions arising in connection with your insurance benefits, including but not limited to eligibility, interpretation of Plan language, and findings of fact with regard to any such questions."

ERISA specifically contemplates the utilization of fiduciaries that may not be entirely neutral. See 29 U.S.C. § 1108(c)(3) (providing that employers may appoint their employees to serve as plan fiduciaries, despite the employer's status as a "party in interest"); 29 C.F.R. § 2560.503-1(g)(2) (providing that an insurance company may review and decide upon denied benefit claims after making the initial denial). Accordingly, not every allegation of impartiality alters the standard of review. A plan beneficiary is not entitled to less deferential review absent material, probative evidence demonstrating that a palpable conflict of interest existed, which caused a serious breach of the administrator's fiduciary duty. See Woo, 1998 WL 261176 at *3-4 (holding that the combination of a palpable conflict of interest and a serious procedural irregularity warrants significantly less deferential review).[4]

When considered in isolation, an insurer's desire to maintain competitive insurance rates could be construed as a conflict of interest. However, a benefits determination includes equally compelling long-term business concerns that would encourage insurers to make these determinations in a fair and consistent manner, thus negating any indicia of bias. In the long run, an insurer that routinely denies valid claims for benefits would have difficulty retaining current customers and attracting new business. See Chalmers v. Quaker Oats Co., 61 F.3d 1340, 1344 (7th Cir. 1995) (finding no conflict of interest when a corporate officer that is administrating a large unfunded company sponsored benefits plan is confronted with a relatively small claim for benefits). We therefore hold that Farley has not demonstrated a palpable conflict

_____

[4]A palpable conflict of interest or serious procedural irregularity will ordinarily be apparent on the face of the administrative record or will be stipulated to by the parties. Thus, the district court will only rarely need to permit discovery and supplementation of the record to establish these facts. We note, however, that conducting limited discovery for the purpose of determining the appropriate standard of review does not run afoul of the general prohibition on admitting evidence outside the administrative record for the purpose of determining benefits. See Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998).

of interest.  See Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees, 970 F.2d 1165, 1173 (3d Cir. 1992) (holding that a fiduciary's desire to maintain actuarial soundness of the plan does not constitute a conflict of interest).  But see Lee v. Blue Cross/Blue Shield of Alabama, 10 F.3d 1547, 1552 (11th Cir. 1994) (holding that an insurer's desire to maintain competitive rates does constitute a conflict of interest).[5]  We will consequently review Blue Cross's decision for an abuse of discretion.

## B.    Blue Cross's Decision to Deny Medical Benefits

We review de novo the district court's application of the deferential standard of review.  See Bolling v. Eli Lilly and Co., 990 F.2d 1028, 1029 (8th Cir. 1993).  Under this standard, an administrator's decision to deny benefits will stand if reasonable.  See Donaho v. FMC Corp., 74 F.3d 894, 899-900 (8th Cir. 1996).    In determining reasonableness, we focus on whether the decision is supported by substantial evidence.  Id. at 900.[6]  We consider only the evidence that was before the administrator when the claim was denied.  See Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998).  We do not, however, substitute our own weighing of the

---

[5]This case demonstrates why the claims administrator's dual role as plan insurer should not automatically warrant heightened review.  See Woo, 1998 WL 261176 at *3 n.2.  Although not entirely clear from the record, Blue Cross does not have a direct profit motive in denying claims because it is a nonprofit corporation.  Accordingly, Blue Cross's dual role does not create a palpable conflict of interest.

[6]When determining whether an administrator's interpretation of a plan is reasonable, we apply a five-factor test.  See Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992).  Here, however, neither party disputes the administrator's interpretation of the Plan.  We are asked to review the administrator's evaluation of the facts to determine the application of the Plan.  Thus, the five-factor test is not instructive.  See Donaho, 74 F.3d at 899-900 n.9.

evidence for that of the administrator.  See Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997).

The issue before the Appeals Coordinator was whether Farley had a condition causing symptoms, before November 1, 1994, that would have caused an ordinarily prudent person to seek diagnosis, care, or treatment.  The Appeals Coordinator concluded that Farley had such a condition.  In reaching that conclusion, the Appeals Coordinator primarily relied upon Farley's medical records and Dr. Booker's statements indicating that Farley had symptoms prior to the insured period.  Our task is to determine whether the Appeals Coordinator's conclusion is supported by substantial evidence.  We find overwhelming support in the record.

After Farley's surgery, Dr. Booker submitted an insurance form diagnosing Farley as having polymenorrhea, dysmenorrhea, and uterine leiomyomata.  The form stated that Farley first consulted Dr. Booker for this condition on March 16, 1995; that it was not a chronic condition; and that he had treated Farley for it on October 19, 1994.  The statement that Farley first consulted Dr. Booker for this condition in March seems to contradict the statement that he had treated her for this condition the previous October. The Appeals Coordinator, however, resolved that ambiguity by reviewing Dr. Booker's office notes.

Dr. Booker's notes, dated March 20, 1995, state that Farley "has a long history of heavy vaginal bleeding" and that because a recent exam "showed the uterus to be enlarged to about twelve weeks size and tender consistent with uterine leiomyomata, we have elected to proceed with" surgery.  These notes clearly show that Dr. Booker elected to proceed with surgery to correct Farley's heavy bleeding and enlarged uterus. Thus, her postoperative diagnosis of two additional conditions that were also corrected by the hysterectomy does not alter the fact that Farley had the surgery to correct her heavy bleeding and enlarged uterus, which were detected before she was eligible for Plan benefits.

Dr. Booker's October 19, 1994, notes show that, prior to the insured period, Farley had been bothered by abnormally frequent menstruation and that she had an enlarged uterus, which was "consistent with probably uterine leiomyomata." Although Dr. Booker did not recommend any treatment in October, the record supports the conclusion that Farley was then experiencing, although to a lesser degree, the same symptoms that led to her surgery approximately five months later.

Moreover, the Appeals Coordinator's conclusion that Farley's medical records demonstrated that she had a "preexisting condition," was further supported by Dr. Booker's letter. Dr. Booker, apparently at the request of Farley's counsel, submitted a letter to Blue Cross stating that "Farley had experienced symptoms prior to her effective date." After receiving this letter, the Appeals Coordinator took the additional step of reviewing Dr. Booker's office notes from the October, 19, 1994, consultation, and came to the same conclusion.

After carefully reviewing the stipulated administrative record, we conclude that the decision to deny Farley's claim for medical benefits is supported by substantial evidence. Therefore, the district court erred in finding an abuse of discretion.

## III.   CONCLUSION

For the reasons given above, we reverse the district court's judgment and remand with instructions to enter judgment consistent with this opinion.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.