# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3350

_____

Janice M. Barnhart        *
       *
       Appellant,        *
       *
       v.        *    Appeal from the United States
       *    District Court for the Western
UNUM Life Insurance Company of    *    District of Missouri
America,        *
       *
       Appellee.        *

_____

Submitted: March 11, 1999
Filed: May 28, 1999

_____

Before McMILLIAN, MORRIS SHEPPARD ARNOLD, Circuit Judges, and NANGLE,[1] Senior District Judge.

_____

NANGLE, Senior District Judge.

Janice M. Barnhart appeals the district court's[2] grant of summary judgment to appellee UNUM Life Insurance Company of America ("UNUM") upholding UNUM's denial of her long-term disability benefits under a policy issued by UNUM to

_____

[1]The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The HONORABLE ORTRIE D. SMITH, United States District Judge for the Western District of Missouri.

Boatmen's Bancshares, Inc. ("Boatmen's") for the benefit of its eligible employees. She additionally appeals the district court's denial of her "Motion for New Trial."[3] We affirm.

## I. BACKGROUND

Janice Barnhart was employed by Boatmen's Bank as a return items clerk in Kansas City from August 1989 until her alleged disability date of February 1995. On December 1, 1990, Barnhart became covered by a retirement plan with disability benefits administered by UNUM. The Plan is an "employee welfare benefit plan" under the requirements of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1002, et seq. In May 1995, Barnhart, at 57 years of age, applied for long-term disability benefits under the policy, claiming disability because of back and neck pain and headaches. Appellant's Compl. Addendum 1 (hereinafter "Ad. 1.," etc.).

The Policy states, "[I]n making any benefit determination under this policy, the Company shall have the discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of this policy." Ad. 1. The Policy defines disability as:

> . . . because of injury or sickness:
>> 1. the insured cannot perform each of the material and
>> substantial duties of [her] regular occupation; and

---

[3]The Court notes that even though plaintiff's motion is denominated as a "Motion for New Trial," because the district court granted summary judgment, a trial had not previously occurred. Apparently the court and the parties treated this motion as a motion to reconsider the order granting summary judgment, which if reversed, would have necessitated a bench trial.

2.    after benefits have been paid for 24 months, the insured cannot perform each of the material and substantial duties of any gainful occupation for which [she] is reasonably fitted by training, education experience; or

3.    the insured, while unable to perform all of the material and substantial duties of [her] regular occupation on a full-time basis, is:

    a.    performing at least one of the material and substantial duties of [her] regular occupation or another occupation on a part-time or full-time basis; and

    b.    earning currently at least 20% less per month than [her] indexed pre-disability earnings due to that same injury or sickness.

Ad. 2.

Barnhart submitted various doctors' reports substantiating her pain. Her treating physician, Dr. Carlos Palmeri, noted that she had pain while performing normal activities and could not make lifting movements. He stated Barnhart attended physical therapy and that she might not be able to return to work. Def.'s Mot. Summ. J. Ex. A at 181. Dr. Frank Holladay, a consulting physician, concluded that plaintiff had cervical spondylosis[4] with no particular nerve encroachment. Barnhart's cervical spine x-ray indicated spurring at C4-5 and C5-6, but showed no herniation. Id. at 174.

---

[4]Cervical spondylosis is ankylosis (stiffening) and degeneration of the cervical (neck) vertebrae. STEDMAN'S MEDICAL DICTIONARY 92, 314, 1656-57 (26th ed. 1995).

3

Magnetic resonance imaging (MRI) indicated that her right shoulder was normal. Ad. 3.

Julie Firfer, an employee nurse at UNUM, reviewed all the medical information and concluded that Barnhart was capable of performing a sedentary job based on the medical evidence. UNUM sent its registered benefits representative, Shirley Beltz, to Barnhart's home to evaluate her. Beltz stated Barnhart demonstrated good range of motion and had no problems walking. Barnhart reported doing numerous activities around her home, including fixing breakfast, washing dishes, unpacking, and driving. Beltz also reported that plaintiff stated that her pain, which is always present, is controlled by medication. After reviewing Beltz's report, Firfer concluded that Barnhart's description of symptoms did not correlate with her level of activity and did not show that she was incapable of performing sedentary work. Ad. 3. UNUM determined plaintiff was not disabled within the policy's definition of disability, and on August 18, 1995, it denied plaintiff's request for benefits, finding that it had no objective medical evidence to support a finding that she was unable to perform a sedentary occupation. Ad. 4. Barnhart timely requested review of the denial of benefits. Palmeri wrote UNUM that Barnhart needed "a different kind of work where she wouldn't have to bend her neck." Def.'s Mot. Summ. J. Ex. A at 126.

UNUM affirmed its earlier denial of benefits and then forwarded Barnhart's file to its quality review division in October 1995 and requested more medical information from Barnhart. UNUM asked Palmeri for more complete information and to complete a physical capacities evaluation; also, plaintiff was asked to complete an "activities of daily living" questionnaire. Palmeri diagnosed Barnhart with cervical spondylosis, radiculopathy,[5] and degenerative disc disease. He stated that Barnhart was totally disabled and could not work in any occupation. He found that Barnhart could sit for two hours in an eight hour workday, never stand, walk for one hour, occasionally lift

_____

[5]Radiculopathy is a disorder of the spinal nerve roots. STEDMAN'S at 1484.

4

ten pounds, occasionally climb stairs, reach above her shoulders, and never stoop, bend, squat, kneel, or crawl. Id. at 80-81. In the daily living questionnaire, Barnhart herself stated that she helps cook and do laundry, helps with housecleaning chores, mows the lawn with a self-propelled mower, shops for groceries, drives, reads, watches TV, tends plants and flowers, and sleeps normally. Her regular medications include Tylenol, Pepcid and Darvocet. She reported having pain that was rarely gone. Ad. 4.

UNUM's Independent Medical Examinations Coordinator, Jan Eisenberg, selected Mr. Russell Eisele, a physical therapist, and Dr. Robert Rondinelli, M.D., Ph.D., to make independent evaluations of Barnhart. Eisele found that Barnhart could perform sedentary light work on a part-time basis and noted that Barnhart had slightly decreased trunk and cervical mobility, decreased trunk strength and subjective complaints of pain. Ad. 5. Rondinelli, using the United States Department of Labor guidelines, also found that Barnhart was capable of sedentary to light work. His diagnosis was cervical osteoarthritis, probable lumbosacral osteoarthritis, cachexia,[6] midline cerebellar ataxia,[7] and a questionable lung mass. Rondinelli suggested Barnhart undergo a psychological evaluation to determine whether stress was contributing to her underlying impairment. Ad. 5. On November 19, 1996, after reviewing the additional medical evidence, UNUM again affirmed its denial of Barnhart's claim for long term disability benefits, stating that Barnhart was capable of performing sedentary work on a full-time basis with certain accommodations. Def.'s Mot. Summ. J. Ex. A at 39-40.

On May 21, 1997, plaintiff filed a complaint in the district court asserting a claim under ERISA, 29 U.S.C. § 1132, for improper denial of the claim, alleging that she was entitled to benefits under the terms of the policy and the proof she submitted. Ad. 1.

---

[6]Cachexia is weight loss. STEDMAN'S at 257.

[7]Ataxia is lack of coordination. STEDMAN'S at 161.

UNUM denied the allegations and filed a motion for summary judgment, claiming that its finding was reasonable and that Barnhart was not disabled as defined by the policy based upon the undisputed facts. To oppose the motion, plaintiff charged that UNUM breached its fiduciary duty and attached an affidavit by Barnhart relating to her physical condition and a Social Security Disability Administration determination of disability letter. The district court, using a deferential standard of review, granted UNUM's motion for summary judgment on June 10, 1998, holding that UNUM had produced uncontroverted evidence that its decision was not arbitrary and capricious. The court also found that plaintiff had not produced any evidence that UNUM's decision was extraordinarily imprudent, extremely unreasonable, or unsupported by substantial evidence. The court refused to consider the affidavit and the Social Security letter because these items were not before the UNUM administrator when the disability determination was made.

On June 17, 1998, plaintiff filed a "Motion for New Trial," claiming that the court improperly failed to consider the affidavit, the Social Security letter, and overlooked UNUM's fiduciary role as a trustee to act in the plaintiff's best interests in reviewing her claim. Because of this Court's decision in Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998) (adopting a sliding scale standard of review for conflicted fiduciaries), the district court, in considering Barnhart's motion, asked the parties to brief the standard of review outlined in Woo. After considering the parties' arguments, the court found that the administrator had a conflict of interest. Using a "sliding scale" standard of review, the court denied plaintiff's motion, finding that the record satisfied this standard because it contained substantial evidence bordering on a preponderance to uphold the administrator's decision.

Barnhart appeals the order for summary judgment claiming that the district court erred by failing to properly consider UNUM's breach of its fiduciary duties to plaintiff, failing to consider the affidavit and Social Security disability determination, and failing to consider persisting material issues of fact. Barnhart appeals the denial of the

6

"Motion for New Trial," claiming that the court erred by declining to take testimony to flesh out conflicts of interest. UNUM argues that the court improperly invoked the sliding scale, but that under any standard, it should prevail.

## II. DISCUSSION

The Court reviews *de novo* the district court's grant of summary judgment, viewing the record in the light most favorable to the nonmoving party. Woo, 144 F.3d at 1160. Similarly, this Court reviews *de novo* the district court's determination of the appropriate standard of review under ERISA. Id. The Court finds that the district court properly employed the arbitrary and capricious standard of review in granting summary judgment, but improperly used a sliding scale standard of review in considering the so-called "Motion for New Trial."

The Supreme Court enunciated the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111; 109 S. Ct. 948, 954; 103 L. Ed. 2d 80 (1989). Using principles of trust law, the Court held that a denial of benefits challenged under § 1132(a)(1)(B) should be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a deferential standard is to be used. Firestone, 489 U.S. at 115; 109 S. Ct. at 956. The parties agree that the Plan grants discretionary authority to UNUM to make benefits determinations and to interpret the policy. Consequently, the Eighth Circuit uses an abuse of discretion standard. Layes v. Mead Corp. , 132 F.3d 1246, 1250 (8th Cir. 1998).

When the benefit plan, however, grants discretion to an administrator or fiduciary operating under a conflict of interest, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' " Firestone, 489 U.S. at 115; 109 S. Ct. at 956 (quoting Restatement (Second) of Torts § 187 cmt. d (1959)).

7

The parties additionally agree that the insurer is also the plan administrator. Thus, UNUM will have a direct financial benefit when it denies a claim. Such a conflict of interest may trigger a less deferential standard of review. Woo, 144 F.3d at 1161; see also Bedrick v. Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir.1996) ("Inasmuch as the law is highly suspect of 'fiduciaries' having a personal interest in the subject of their trust, the 'abuse of discretion' standard is not applied in as deferential a manner to such plans."). This Court held in Woo that the degree of deference to accord such a decision will be decreased on a sliding scale in proportion to the extent of conflict present, recognizing the arbitrary and capricious standard is inherently flexible. Woo, 144 F.3d at 1161 (citing Chambers v. Family Health Plan Corp., 100 F.3d 818, 827 (10th Cir. 1996) (adopting the sliding scale approach to meet the requirements of Firestone to resolve conflicts of interest with a fiduciary)).

Woo also pointed out that not every funding conflict of interest warranted heightened review. Woo, 144 F.3d at 1161 n.2 (giving as an example the use of retrospective premiums to offset underwriting losses). This Court further elaborated this principle in Farley v. Arkansas Blue Cross and Blue Shield, 147 F.3d 774 (8th Cir. 1998). In Farley this Court refused to invoke a heightened standard of review when plaintiff argued that the insurer's desire to maintain competitive insurance rates created an inherent conflict of interest. The Farley Court noted that ERISA itself contemplated the use of fiduciaries who might not be entirely neutral. Id. at 776 (citing 29 U.S.C. § 1108(c)(3) (providing that an insurance company could review its own initial denial of benefits)). The Court also noted that indicia of bias could be negated by "equally compelling long-term business concerns." Id. at 777.

Woo utilizes a two part gateway requirement to obtain a less deferential review: the plaintiff must present "material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." Woo, 144 F.3d at 1160. Woo met this two part requirement by showing that the plan

8

administrator had a financial conflict of interest, **and** that a serious breach of fiduciary duty occurred when the insurer used only an in-house medical reviewer to review her claims of disability. Id. at 1161. Farley failed to meet even the first prong; the Farley Court found that because Blue Cross is a nonprofit corporation, the plaintiff failed to show a palpable conflict of interest, even though the disability decisionmaker was also the insurer.[8] Farley, 147 F.3d at 777 & n.5.

In this case, the parties agree that the financial conflict is present, and UNUM offers no ameliorating circumstances to show why this is not a palpable conflict as described in the first prong of Woo. Assuming the first prong of Woo is met, Barnhart must show how this conflict caused a serious breach of the plan administrator's fiduciary duty to her, thereby satisfying the second prong. In its order considering plaintiff's "Motion for New Trial," the district court "assume[d] the administrator had a conflict of interest because the plan administrator was also the plan insurer. Therefore a less deferential standard of review or 'sliding scale' should be applied to

---

[8]Other circuits have reached a contrary conclusion. See Lee v. Blue Cross/Blue Shield of Ala., 10 F.3d 1547, 1552 (11th Cir. 1994) (finding that the insurer's desire to maintain competitive rates constitutes a conflict of interest); Peruzzi v. Summa Med. Plan, 137 F.3d 431, 433 (6th Cir.1998) (finding a conflict of interest inherent in self-funded plans); but cf. de Nobel v. Vitro Corp., 885 F.2d 1180, 1191 (4th Cir. 1989) (finding that plan administrators' decisions have had a favorable impact on the balance sheet of the trust itself, however, suggests no "conflict of interest"). The Tenth Circuit in Jones v. Kodak Medical Assistance Plan, 169 F.3d 1287 (10th Cir. 1999), refused to find a per se conflict of interest based on the single fact that the insurer also acted as administrator, but rather employed a four part test to determine a conflict of interest: "(1) the plan is self-funded; (2) the company funding the plan appointed and compensated the plan administrator; (3) the plan administrator's performance reviews or level of compensation were linked to the denial of benefits; and (4) the provision of benefits had a significant economic impact on the company administering the plan." When the court finds that the dual role of the plan administrator jeopardized his impartiality, his decisions are reviewed with less deference. Id. at 1291.

the administrator's decision." The district court erred by failing to consider the second prong of Woo; instead, it used an analysis more akin to those circuits who presume bias whenever a direct financial interest is shown (see footnote 7). We therefore proceed to the second prong of Woo to complete the analysis.

The second prong requires demonstrating how a conflict of interest or serious procedural irregularity caused a serious breach of the administrator's fiduciary duty.[9] This requirement is met by showing that the conflict or irregularity has a connection to the "substantive decision reached." Woo, 144 F.3d at 1161. The evidence offered by the claimant must give rise to "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." Layes, 132 F.3d at 1250. The Woo Court considered the administrator's failure to consult an independent medical reviewer a failure to use proper judgment or to thoroughly investigate Woo's claim. The Court deemed this failure egregious. Woo, 144 F.3d at 1161. Barnhart has failed to show any such connection between the financial interest of UNUM and its ultimate decision. The mere fact that UNUM reached a decision contrary to Barnhart's medical evaluators, when it based this decision on substantial evidence in the record, reports of outside medical reviewers, and conflicting evidence in Barnhart's own submissions to the record, does not raise doubts in the mind of this Court that UNUM's decision was arbitrary or capricious.

Barnhart additionally charges that UNUM breached its fiduciary duty by failing to act in the sole interest of Barnhart and by acting as an adversary by investigating Barnhart, thus failing in its duty of loyalty. Barnhart fails to appreciate that UNUM's

---

[9]Woo's second prong presents a considerable hurdle for plaintiffs. Logically, a plaintiff who can show that a conflict of interest or serious procedural irregularity caused a serious breach of the administrator's fiduciary duty will more than likely have substantial evidence showing that the fiduciary's decision was arbitrary and capricious once the sliding scale is invoked to lessen the court's deference for the administrator's decision.

fiduciary obligations extend to everyone who is covered by the policy. Fiduciary obligations extend primarily to the plan as it relates to all beneficiaries, not just to individual claimants. See Massachusetts Mutual Life Ins. v. Russell, 473 U.S. 134, 142; 105 S. Ct. 3085, 3090; 87 L. Ed. 2d 96 (1985) (reasoning that the fiduciary duty of ERISA provisions are primarily concerned with protecting the integrity of the plan, which in turn protects **all** beneficiaries). UNUM acted prudently on behalf of all beneficiaries by not accepting at face value the medical evidence as submitted by Barnhart, but by conducting a further inquiry into her claims of disability. A company failing to conduct proper inquiries into claims for benefits breaches its duty to all claimants as a fiduciary of the benefit funds when it grants claims to unqualified claimants. de Nobel v. Vitro Corp., 885 F.2d 1180, 1191 (4th Cir. 1989).

Plaintiff also claims the existence of a number of procedural irregularities, including "secret" processing of the claim by UNUM's quality review division, deliberate disregard of the attending physician's opinion, and the use of biased medical examiners. These allegations are unsupported by the evidence. UNUM has produced a detailed compendium describing who was involved in the review process and the results of the reviewers' decisions. Any remaining "secrets" were subject to properly conducted discovery. Also, unlike Woo, UNUM employed outside examiners as well as in-house evaluators, and plaintiff has shown no bias in these examiners other than the fact that they disagreed with her own physicians. The mere assertion of apparent procedural irregularities, without more, does not give rise to heightened review. Layes, 132 F.3d at 1250.

While the Court acknowledges that plaintiff met the first prong of Woo by showing UNUM's financial bias, plaintiff has failed to meet the second prong of Woo. Consequently, the Court finds that the arbitrary and capricious standard of review is the correct standard to review the administrator's decision. The district court's error in determining the correct standard of review in its order regarding the "Motion for New Trial" is harmless because it used a more stringent standard of review than required.

11

The district court not only used the less deferential sliding scale, but as UNUM points out, it "slid" the scale considerably, to a point of minimal deference, according UNUM the same minimal deference as <u>Woo</u>, where the court found "egregious" conduct. Nevertheless, the district court still found that the record "contain[ed] substantial evidence bordering on a preponderance" to uphold the administrator's decision. <u>Woo</u>, 144 F.3d at 1162. We agree. Because of plaintiff's lack of supporting evidence, the district court acted well within its discretion to deny plaintiff's request for a trial to "flesh out" alleged conflicts of interest.

The district court also correctly found in its order granting summary judgment that the Social Security benefits letter and plaintiff's affidavit were not before the administrator at the time of the benefits determination and should not have been considered by the court. <u>Layes</u>, 132 F.3d at 1251; cf. <u>Brown v. Seitz Foods, Inc. Disability Benefit Plan</u>, 140 F.3d 1198, 1200-01 (8th Cir. 1998) (allowing limited discovery for the purpose of determining the appropriate standard of review does not violate the general prohibition on admitting evidence outside the administrative record).

## III. CONCLUSION

Finding the district court properly granted summary judgment under the arbitrary and capricious standard of review and finding that its denial of the "Motion for New Trial" based on an analysis of the record under a more stringent, albeit incorrect, standard is also correct, we hereby affirm.

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.