# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1745

_____

Irene Sahulka,                          *
                                        *
        Appellant,                      *
                                        *   Appeal from the United States
    v.                                  *   District Court for the
                                        *   District of Nebraska.
Lucent Technologies, Inc.,              *
                                        *
        Appellee.                       *

_____

Submitted:   December 15, 1999
    Filed:   March 13, 2000

_____

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

This case arises out a suit brought by Irene Sahulka against Lucent Technologies, Inc. (Lucent), pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001- 1461, alleging that Lucent wrongfully refused to pay the plaintiff discretionary death benefits under the AT&T [1] Pension Plan (Plan) following the death

_____

[1]In February 1996, the Omaha, Nebraska AT&T facility was spun off and became part of Lucent. Lucent assumed responsibility for all benefit claims of former AT&T employees who became or would have become Lucent employees. Mrs. Sahulka was also employed by AT&T at its Omaha, Nebraska facility and is currently

of her husband.  Mrs. Sahulka appeals the district court's[2] grant of summary judgment to Lucent and the court's exclusion of certain evidence submitted by the appellant.  We affirm the district court's judgment.

## I.  BACKGROUND

The appellant's husband, William Sahulka, was an AT&T employee at the time of his death on October 21, 1994.  The Sahulkas married on January 7, 1994, but Mr. Sahulka filed for divorce on July 21, 1994, and moved out of the couple's home.[3]  Mr. Sahulka's AT&T death benefits included a Sickness Death Benefit (SDB).[4]  The Plan states that if an employee dies after a sickness or a non-work-related accidental injury, the employee's beneficiaries may be entitled to a SDB "which shall not be in excess of $500, or 12 months' wages, as defined in Section 5.9, whichever is greater."  Under the terms of the Plan, the maximum to which Mrs. Sahulka might be entitled is $28,693.44.

Under the Plan, SDB beneficiaries are classified as either mandatory or discretionary.  Because Mrs. Sahulka was not living with Mr. Sahulka when he died, she was classified as a discretionary beneficiary.[5]  The discretionary classification gave AT&T the authority to determine to whom payments would be made and in what amounts, "taking into consideration the degree of dependency and such other facts as

an employee of Lucent.

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

[3]The divorce proceedings were pending at the time of Mr. Sahulka's death.

[4]The appellant received several benefits following Mr. Sahulka's death, but the SDB is the only benefit at issue in this suit.

[5]To be a mandatory beneficiary the spouse must be a legal spouse living with the employee at the time of the employee's death.

it may deem pertinent."[6]

The Plan provides that AT&T shall be the Plan administrator and shall appoint an Employee Benefits Committee (EBC) to administer the Plan. Under the Plan, the EBC is granted the powers "necessary in order to enable it to administer the Plan" and adopt such bylaws and rules as it may find appropriate. Using these powers, the EBC delegated the authority to grant or deny claims for benefits to the Benefit Claim and Appeal Committee (BCAC).

On November 3, 1994, Mrs. Sahulka applied to the BCAC for the SDB and submitted her "Death Benefit Claim Statement." On March 31, 1995, the BCAC denied the appellant's claim, finding that Mrs. Sahulka had not met the financial need requirement and had not submitted proof that she was receiving financial support from Mr. Sahulka at the time of his death. On April 25, 1995, Mrs. Sahulka exercised her right to appeal the denial of benefits to the EBC. On June 16, 1996, the EBC denied Mrs. Sahulka's claim.

---

[6]The Plan defines discretionary beneficiaries, in pertinent part, as follows:

If there be no beneficiary of the deceased Employee as described in Section 5.5(), then, . . . in the event of death by sickness, a Sickness Death Benefit in an amount not to exceed the amount specified in Section 5.3, may be paid to any other person or persons who may be beneficiaries, as defined in the first sentence of this Section 5.5, and be receiving or entitled to receive support from the deceased Employee at the time of the Employee's death.

Subject to the limitations expressed in this Section 5.5(b) the Committee or the [Benefit Claim and Appeal Committee], as applicable, shall have full authority to determine to whom payments shall be made and the amount of the payments, taking into consideration the degree of dependency and such other facts as it may deem pertinent.

-3-

In 1997, Mrs. Sahulka filed the present lawsuit against Lucent. On March 10, 1999, the district court denied Mrs. Sahulka's motion for summary judgment, sustained Lucent's objections to certain evidence that Mrs. Sahulka offered in support of her summary judgment motion,[7] granted Lucent's motion for summary judgment, and dismissed the case with prejudice. On March 15, 1999, Mrs. Sahulka filed the present appeal.

## II. STANDARD OF REVIEW

In granting summary judgment to Lucent, the district court reviewed the benefits decision under an abuse of discretion standard, rejecting Mrs. Sahulka's argument that a less deferential standard of review is appropriate. We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party. See Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). Likewise, this Court reviews *de novo* the district court's determination of the appropriate standard of review under ERISA. See id.

Under ERISA, a plan beneficiary has the right to judicial review of a benefits determination. See 29 U.S.C. § 1132(a)(1)(B). The court reviews the denial of benefits for abuse of discretion when a plan gives the administrator "discretionary authority to determine eligibility benefits or to construe terms of the plan," as the Plan

---

[7]The district court excluded certain submissions by the appellant to the district court because they were either not based on facts or offered only the appellant's personal beliefs and interpretations of facts not before the administrator at the time it rendered its decision denying the appellant the discretionary benefits. The appellant's appeal of the district court's order excluding these items is without merit and warrants no further discussion.

does.[8]  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Under the abuse of discretion standard, "the plan administrator's decision to deny benefits will stand if a reasonable person could have reached a similar decision."  Woo v. Deluxe Corp., 144 F.3d 1157, 1162 (8th Cir. 1998) (citation omitted).  In evaluating reasonableness, the court determines "whether the decision is supported by substantial evidence, which is more than a scintilla but less than a preponderance."  Id. (quotation omitted).

The deferential abuse of discretion standard of review applies "unless the beneficiary comes forward with evidence establishing that the administrator acted under a conflict of interest, dishonestly, with an improper motive, or without using judgment."  Wald v. Southwestern Bell Customcare Med. Plan, 83 F.3d 1002, 1007 (8th Cir. 1996) (citation omitted).  On appeal, Mrs. Sahulka asserts that we should not review the administrator's decision under the default abuse of discretion standard for two reasons: (1) SDBs were paid from the operating revenue of AT&T, thus creating an inherent conflict of interest; and (2) the appellee breached its fiduciary duty to the appellant by

---

[8]The pertinent part of the Plan giving the EBC final and discretionary authority to determine eligibility for benefits is as follows:

The [EBC] shall be the final review committee under the Plan, with the authority to determine conclusively for all parties any and all questions arising from the administration of the Plan, and shall have sole and complete discretionary authority and control to manage the operation and administration of the Plan, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits, interpretation of all Plan provisions, determination of the amount and kind of benefits payable to any participant, spouse or beneficiary, and construction of disputed or doubtful terms.  Such decisions shall be conclusive and binding on all parties and not subject to further review.

knowingly basing its denial of benefits on incomplete and inaccurate information.[9]

Mrs. Sahulka must satisfy a two-part test to obtain a less deferential review: she "must present material probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's duty to her." Woo, 144 F.3d at 1160 (citation omitted). The second prong of the test requires that the appellant demonstrate that the conflict or irregularity has a connection to the substantive decision reached. See Barnhart v. Unum Life Ins. Co. of Am., 179 F.3d 583, 588-89 (8th Cir. 1999). The evidence must give rise to "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." Id. at 589 (quotation omitted).

Mrs. Sahulka has not met her burden of showing that the payment of SDBs from operating revenue had a connection to the substantive decision reached. Even assuming that paying SDBs from operating revenue may create a conflict of interest, Mrs. Sahulka must still show that the conflict caused a serious breach of the plan administrator's fiduciary duty to her.[10] In Barnhart, a financial conflict was present due

_____

[9]The appellant seems to argue that she has stated a claim under 29 U.S.C. § 1104(a), which sets forth the "prudent man standard of care" in defining fiduciary duties under ERISA. However, 29 U.S.C. § 1104 cannot independently support a claim of fiduciary duty. See Slice v. Sons of Norway, 34 F.3d 630, 633 (8th Cir. 1994). Section 1132(a) provides the exclusive causes of action for claims by ERISA plan participants and beneficiaries seeking to enforce rights under an ERISA plan. See id.

[10]Some courts have rejected the notion that paying benefits out of earnings constitutes a conflict of interest. In Chalmers v. Quaker Oats Co., 61 F.3d 1340 (7th Cir. 1995), the court rejected a claim that the Committee had an automatic bias due to the benefits coming directly from Quaker's earnings because "[t]he impact on a company's welfare of granting or denying benefits under a plan will not be sufficiently significant as to threaten the administrators' impartiality." Id. at 1344 (citation omitted). Other courts that have considered the issue of whether paying benefits out of operating revenue creates a conflict of interest have not engaged in the second prong of the test

to the plan administrator also acting as the plan insurer, but the claimant failed to show any connection between the financial interest of the administrator and its ultimate decision. See 179 F.3d at 588-89. The court found that the mere fact that the administrator reached a decision contrary to the claimant's medical evaluators, when it based its decision on substantial evidence in the record, reports of outside medical reviewers, and conflicting evidence in the claimant's own submissions to the court, did not raise doubts that the administrator's decision was arbitrary or capricious. See id. at 589. Similarly, Mrs. Sahulka has not offered any evidence showing a connection between the financial interest of the Plan administrator and its ultimate decision. Therefore, her claims do not raise doubts that the Plan administrator's decision was arbitrary or capricious.

Mrs. Sahulka also claims that the administrator's failure to properly investigate her financial condition or require the appellant to provide supporting information for her financial disclosures requires that the court invoke a less deferential standard of review. Mrs. Sahulka claims that the EBC[11] failed to properly investigate her claim for benefits because it, among other things, required Mrs. Sahulka to complete her own financial form and did not independently verify the information. She argues that the failure of the administrator to investigate her financial representations resulted in the committee having an inaccurate picture of her financial situation, including the erroneous belief that she owned two homes, when, in fact, both homes were in foreclosure.

---

and have held that the alleged conflict does not operate to change the standard of review but, rather, becomes a factor in determining whether there was an abuse of discretion. See Pagan v. Nynex Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995); Salley v. E.I. DuPont de Nemours & Co., 966 F.2d 1011, 1014 (5th Cir. 1992).

[11]Because the EBC ultimately decided Mrs. Sahulka's claim for the SDB, we refer to the EBC when describing the actions of both the BCAC and the EBC.

The lack of a thorough investigation by a fiduciary can result in a serious procedural irregularity requiring a less deferential standard of review. See Woo, 144 F.3d at 1161; Wald, 83 F.3d at 1007. In this case, however, we agree with the district court's ruling that the EBC's procedures for processing Mrs. Sahulka's claim were adequate. Mrs. Sahulka received a letter and documentation from AT&T's Pension Service Center explaining how to file her claim. In addition, Mrs. Sahulka had the assistance of an attorney in preparing the documents necessary to file her claim. The appellant's attorney appealed the BCAC's decision and fully explained the grounds for her appeal. The information about Mrs. Sahulka's financial situation existed at the time that she filed the necessary statements and was known to her. Moreover, Mrs. Sahulka had ample opportunity to supplement the information provided and to ensure that the EBC had accurate information about her financial condition.

Under the Plan, a claimant is under an obligation to provide information to attempt to establish both financial dependence and financial need. When a plan places the burden on the claimant to provide necessary information, the claimant cannot shift the burden of investigation to the plan administrator. See Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 46 (3d Cir. 1993). In such cases, a rule compelling plan administrators to independently investigate and verify the information that claimants submit would add substantial and unnecessary costs to the administration of ERISA plans. To the extent that the EBC failed to appreciate Mrs. Sahulka's alleged dire financial condition because of error or omissions in the documents that Mrs. Sahulka submitted, the fault lies with Mrs. Sahulka, not with the EBC. Therefore, it is appropriate to review the benefits decision under an abuse of discretion standard.[12]

---

[12]Mrs. Sahulka's other claims of procedural irregularities are likewise without merit and do not warrant discussion.

### III.  THE EBC'S DECISION TO DENY MRS. SAHULKA THE SDB

Because we review the EBC's decision under an abuse of discretion standard, we must affirm if "a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997) (quotation omitted).  We consider only the evidence that was before the administrator when the claim was denied.  See Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998).  We do not, however, substitute our own weighing of the evidence for that of the administrator.  See Cash, 107 F.3d at 641.

In reviewing the EBC's decision, we note that the EBC was operating under two levels of discretion: (1) general discretion to conclusively determine eligibility benefits and construe terms of the Plan; and (2) under the SDB provision, discretion to determine to whom payments would be made and the amount of such payments.  The issue before the EBC was whether the appellant had established the requisite financial "need" under the Plan for an award of the discretionary SDB.  The EBC "based its decision on the dependency and financial need of the [appellant] following the death [of Mr. Sahulka]."  The EBC concluded that there was no evidence of financial need based on the assets owned by Mrs. Sahulka, the assets received as a result of Mr. Sahulka's death, and the fact that Mrs. Sahulka had not exhausted all means available to her in reducing her financial obligations.  After carefully reviewing the record, we conclude that the decision to deny Mrs. Sahulka's claim for the SDB is supported by substantial evidence.

### IV.  CONCLUSION

In sum, we conclude, applying an abuse of discretion standard of review, that the decision of the plan trustees denying the SDB was reasonable.  Accordingly, we affirm the district court's judgment.

A true copy.

Attest:

           CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.