# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3663

_____

| | | |
|---|---|---|
| Mary L. Schatz, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Nebraska. |
| | * | |
| Mutual of Omaha Insurance Company, | * | |
| Mutual of Omaha, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: April 12, 2000
Filed: July 20, 2000

_____

Before BOWMAN and HANSEN, Circuit Judges, and CARMAN,[1] Judge.

_____

BOWMAN, Circuit Judge.

Mary L. Schatz appeals the denial by the District Court[2] of her motion for summary judgment, in which she contended that her former employer, Mutual of Omaha Insurance Company (Mutual), arbitrarily and capriciously rejected her claim for

_____

[1]The Honorable Gregory W. Carman, Chief Judge, United States Court of International Trade, sitting by designation.

[2]The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

long-term disability benefits.  Schatz also appeals the District Court's grant of Mutual's cross-motion for summary judgment on the same issue.  We affirm.

I.

We turn first to discerning the proper standard under which to review Mutual's decision to deny Schatz's claim for benefits under the long-term disability plan (Plan) it administered.  In general, when a long-term disability plan governed by the Employee Retirement Income and Security Act of 1974 (ERISA)[3] "gives the administrator 'discretionary authority to determine eligibility for benefits,' we review the administrator's decision for an abuse of discretion."[4]  Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  The parties agree that ERISA governs the Plan and that Mutual had discretionary authority to determine Schatz's eligibility for benefits.

Even so, we have held that some less deferential standard of review is triggered where the claimant presents "material, probative evidence demonstrating that (1) a palpable conflict of interest . . . existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her."  Woo, 144 F.3d at 1160.  It is only after a claimant clears this initial "two-part gateway requirement," that we apply the "'sliding scale' approach" of determining just how much less deferential the nature of the plan

---

[3]Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. §§ 1001-1461 (1994 & Supp. IV 1998) and in scattered sections of 26 U.S.C.).

[4]We think review for an "abuse of discretion" or for being "arbitrary and capricious" is a distinction without a difference, and we use the terms interchangeably here.  See Donaho v. FMC Corp., 74 F.3d 894, 898 n.5 (8th Cir. 1996).

administrator's conflict warrants our being to the plan administrator's decision to deny benefits.  Id. at 1161.[5]

In applying Woo and its progeny, the District Court determined that there was a palpable conflict of interest, in satisfaction of the first part of the Woo gateway, because Mutual was both "the insurer and an affiliate of the plan administrator." Memorandum Opinion and Order at 10.  Nonetheless, determining that Schatz had made no showing that this conflict caused a serious breach of the plan administrator's fiduciary duty to her, the District Court concluded that the second part of the Woo gateway was not satisfied and, accordingly, that the sliding scale (and some less deferential standard of review) was not triggered.  We review de novo the District Court's determination of the appropriate standard of review.  See Woo, 144 F.3d at 1160.

---

[5]We also have articulated a somewhat different formulation of this analysis.  See Davolt v. The Executive Comm. of O'Reilly Automotive, 206 F.3d 806, 809 (8th Cir. 2000) ("If . . . the record reveals evidence of a conflict of interest or that the plan administrator is acting 'with an improper motive,' we review the plan administrator's discretionary decision de novo.") (quoting Armstrong v. Aetna Life Ins. Co., 128 F.3d 1263, 1265-66 (8th Cir. 1997)).  The kind of conflict and improper motive that provoked de novo review in Armstrong, where the claims reviewers themselves apparently received direct personal financial benefits for rejecting claims, is different in kind from the sort of background conflict created by the mere fact that the same company is both the plan administrator and the plan insurer.  In Davolt, we noted that there is no "blanket rule mandating de novo review in all cases where the insurer of a health benefits plan is also the plan administrator.  Rather, . . . the inquiry is fact specific and limited to instances where the relationship places the ERISA benefits plan administrator in a 'perpetual' conflict of interest."  Id. at 809-10 (holding that district court erred in assuming "automatic" conflict of interest merely because insurer and administrator were same entity; holding that plan administrator properly denied coverage under plan's plain language regardless of whether decision was reviewed de novo or according to "sliding scale").

A.

We consider first the question of whether Mutual was laboring under a palpable conflict of interest given its role as both plan administrator and insurer.[6] As a general matter, when the insurer is also the plan administrator, we have recognized something akin to a rebuttable presumption of a palpable conflict of interest. See Barnhart v. UNUM Life Ins. Co., 179 F.3d 583, 587-88 (8th Cir. 1999). Indicia of bias can be negated by "ameliorating circumstances," such as "'equally compelling long-term business concerns'" that militate against improperly denying benefits despite the dual role. Id. at 588 (quoting Farley v. Arkansas Blue Cross & Blue Shield, 147 F.3d 774, 777 (8th Cir. 1998)); accord Farley, 147 F.3d at 777 n.5 (finding no palpable conflict of interest even though insurer and plan administrator were same corporation because, as nonprofit entity, it "does not have a direct profit motive in denying claims").

Here, Mutual argues that Schatz makes "no showing of any actual bias or conflict of interest." Brief of Appellee Mutual at 18 (emphasis added).[7] Nevertheless,

---

[6]For purposes of this appeal, we accept the District Court's characterization that Mutual was both "the insurer and an affiliate of the plan administrator." Memorandum Opinion at 10; see Joint Appendix at 62 ("Benefits under the Long-Term Disability Plan . . . are fully insured by United of Omaha Life Insurance Company," while plan administrator is "Mutual of Omaha Insurance Company"). Similarly, we also accept Schatz's assertion that, in effect, there is but one "Mutual" acting as both "the Plan Administrator . . . and also the for-profit insurance company issuing the insurance policy under which the Plan for benefits was funded," Brief of Appellant Schatz at 30, largely because Mutual does not dispute this structural connection. We reserve for another day the question of precisely how the fact that a plan administrator and insurer are mere corporate relatives—and how the degree of their consanguinity—would impact a palpable conflict of interest analysis.

[7]The fact that there is no "actual" bias (above and beyond the structural bias inherent in the plan insurer and plan administrator being the same entity) may be important to avoiding the Armstrong-Davolt conclusion that if there are "egregious

given the corporate identity (and, thus, the attending structural and financial conflict of interest) between Mutual as insurer and Mutual as plan administrator, and given that Mutual has articulated no ameliorating circumstances to overcome this structural bias, we conclude that the plan administrator was operating under a palpable conflict of interest and, accordingly, that part one of the Woo two-part gateway is satisfied.

B.

This conclusion, however, does not end our inquiry. The mere fact of an "unameliorated" structural conflict of interest does not necessarily warrant a less deferential standard of review. Accordingly, we must next determine whether Schatz has satisfied the second part of the Woo gateway by presenting material, probative evidence that this palpable conflict of interest actually caused a serious breach of the plan administrator's fiduciary duty to her. We have noted that "Woo's second prong presents a considerable hurdle for plaintiffs." Barnhart, 179 F.3d at 588 n.9. "The evidence offered by the claimant must give rise to 'serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim.'" Id. at 589 (quoting Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir. 1998)).

Schatz suggests that Mutual seriously breached its fiduciary duty to her by improperly rejecting the opinions of her treating physicians that she suffers from chronic pain syndrome, by failing to give sufficient credence to her own subjective reports of pain, by neglecting to develop a record on the physical duties of her position,

circumstances," Woo, 144 F.3d at 1162, then our review is de novo. It is not particularly helpful, however, in ameliorating the concerns present in part one of the Woo analysis (i.e., that Mutual has some background bias given that Mutual's decision (qua administrator) to deny a benefits claim would, at least in some marginal way, benefit the bottom line of Mutual (qua insurer), who then would not have to pay out that claim).

by failing to inform her that it had reopened consideration of her claim, and by improperly interpreting the definition of "disability" in the Plan. In essence, Schatz posits that Mutual's decision was made without "'proper judgment.'" Brief of Appellant Schatz at 32-34 (quoting Woo, 144 F.3d at 1161). After a careful review, we are persuaded that all of Schatz's contentions either do not properly characterize the record or, even if true, would not as a matter of law qualify as serious breaches of Mutual's fiduciary duty.

There is no dispute that Schatz has suffered from chronic back pain for many years, including the time when she was employed by Mutual as a medical review nurse. The question is whether heightened review is warranted because Mutual's institutional bias as both plan administrator and plan insurer caused it to seriously breach its fiduciary duty in determining that Schatz's medical problems were insufficient to entitle her to benefits under the terms of the Plan. The Plan defines "disability" to mean, in relevant part, that a claimant "cannot perform all of the material duties of [claimant's] regular occupation." Joint Appendix at 36. In the first place, because Schatz's regular occupation as a medical review nurse for Mutual was well known to Mutual, we do not perceive any special duty for Mutual to have requisitioned a study of the physical demands of this position. As to whether Schatz was prevented from performing "all of the material duties" of her job, we agree with the District Court that, overall, "the medical evidence provided by the Plaintiff's physicians was not consistent or conclusive." Memorandum Opinion at 10. We note, for instance, that although Schatz had lived and worked with chronic pain for some time, her long-time treating physician testified that his more recent opinion that Schatz should not return to work "wasn't because of some new objective finding. It was because Mary just reported that she couldn't tolerate the pain, that she couldn't do it and it wasn't getting better." Joint Appendix at 77 (Deposition of Dr. Fredrick Schwartz, dated May 26, 1999); see also Joint Appendix at 263 (Letter of Dr. Schwartz, dated March 13, 1998, stating that Schatz's "physical examination has been essentially normal" and characterizing certain "objective findings that correlate with Mary's pain" as "subtle"); Joint Appendix at 417

(Notes of Dr. Patrick Bowman, treating physician, dated March 26, 1996, indicating "although there is no doubt that she has a credible pain generator[,] . . . [h]er pain behavior is somewhat exaggerated"). Dr. John Kalec—an orthopedic specialist who performed an independent medical examination of Schatz—noted that although Schatz reported "multiple subjective complaints," she had "an essentially normal physical examination" and was "capable of gainful employment at a sedentary physical demand level where she would be able to change positions as needed." Joint Appendix at 273 (Letter dated October 6, 1997).

Having reviewed the record carefully, we are satisfied that Mutual exercised proper judgment in determining that Schatz was not disabled under the terms of the Plan and that, in the circumstances of this case, Mutual did not commit a serious breach of fiduciary duty caused by its structural bias. Cf. Barnhart, 179 F.3d at 589 ("The mere fact that [defendant] reached a decision contrary to [plaintiff's] medical evaluators, when it based this decision on substantial evidence in the record, reports of outside medical reviewers, and conflicting evidence in [plaintiff's] own submissions to the record, does not raise doubts in the mind of this Court that [defendant's] decision was arbitrary or capricious."). Because Schatz fails to traverse the Woo gateway, Mutual's decision is not subject to less deferential review and the abuse of discretion standard applies.

## II.

In determining whether Mutual abused its discretion (that is, made a decision that was arbitrary and capricious), we ask whether the decision to deny Schatz benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance. See Donaho, 74 F.3d at 898-901. Provided the decision "is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997); accord Donaho, 74 F.3d at 899 (explaining

that plan administrator's decision "is reasonable if a reasonable person <u>could</u> have reached a similar decision, given the evidence before him, not that a reasonable person <u>would</u> have reached that decision").

In making this assessment, "[w]e consider only the evidence that was before the administrator when the claim was denied." <u>Farley</u>, 147 F.3d at 777. Although Mutual's consideration of Schatz's claim came in several stages, we need not dwell on the details of this chronology because "Schatz is prepared to argue that even if all the information in the Mutual claim file, compiled over a twenty month period from December of 1996 until July of 1998, is considered, Mutual's decision was an abuse of discretion." Brief of Appellant Schatz at 23. As we have outlined above in relation to the second part of the <u>Woo</u> gateway,[8] this record presents substantial evidence from which the plan administrator could have found that Schatz was not disabled under the terms of the Plan. Mutual did not abuse its discretion and, accordingly, we will not disturb its determination.[9]

---

[8]We have observed that there is a close relationship between a claimant satisfying the <u>Woo</u> gateway to less deferential review—by showing that a palpable conflict of interest (or serious procedural irregularity) caused a serious breach of the administrator's fiduciary duty—and there being a sufficient showing that the plan administrator's decision was arbitrary and capricious. <u>See</u> <u>Barnhart</u>, 179 F.3d at 588 n.9. Likewise, a failure to satisfy the <u>Woo</u> gateway requirement to less deferential review may strongly suggest, as it does here, that a plan administrator's decision was not arbitrary and capricious.

[9]We note that Schatz is in the somewhat unusual position of having been granted social security disability benefits while having been denied long-term disability benefits by Mutual. This outcome appears to be the product of discretionary judgment applied to a record containing conflicting evidence as well as the result of the somewhat different standards governing social security and ERISA determinations. <u>See</u> <u>Conley v. Pitney Bowes</u>, 176 F.3d 1044, 1049-50 (8th Cir. 1999) (holding that elaborate schemes mandated in social security context to evaluate claimant's subjective complaints of pain and fitness for particular jobs need not be "import[ed] wholesale,

### III.

Having reviewed all of Schatz's arguments, and finding no basis for reversal, we affirm the judgment of the District Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

into what is essentially a private-law area"), cert. denied, 120 S. Ct. 979 (2000). Compare, for example, the opinion of Dr. Kalec, described above in Part I.B., with the opinion of Ronald Schmidt—a rehabilitation consultant who gave an opinion in Schatz's social security disability case—who concluded that Schatz "needs to lie down periodically throughout the day . . . which would preclude her from most if not all work environments" and that "there are no jobs in the local and/or national economy that exist in significant numbers that she can work." Joint Appendix at 235. We are satisfied that the extent to which Schatz's condition impairs her ability to perform her job—or any job—is something about which reasonable minds could disagree.