# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1445/1934

_____

| | | |
|---|---|---|
| Gina Milone, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the District |
| vs. | * | of Nebraska. |
| | * | |
| Exclusive Healthcare, Inc., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 13, 2000
Filed: March 22, 2001

_____

Before LOKEN and HEANEY, Circuit Judges, and BATTEY,[1] District Judge.

_____

BATTEY, District Judge.

This appeal involves a question of liability for medical expenses under a welfare benefit plan formulated pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. Appellee Gina Milone (Milone) is an employee of Omaha Property and Casualty Company, a Mutual of Omaha affiliate. As an employee, Milone is eligible for health benefits under Omaha Property and Casualty Company's Group Health Plan (the Plan). The Plan in this case is administered by

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

appellant Exclusive Healthcare (Exclusive). The district court[2] overturned the decision of the Plan's Benefit Review Committee which had denied benefits to Milone. It held, based upon the "medical necessity" of Milone's condition, that Exclusive had abused its discretion in denying coverage. It then granted Milone's request for attorney's fees. Exclusive asserts on appeal that the district court erred in granting benefits, attorney fees, and costs to appellee. We affirm.

## FACTS

In October 1997, Milone, suffering from neck, back, and headache pain, was seen by her primary care physician, Dr. Karen Stacey. Dr. Stacey diagnosed Milone as having bilateral hypertrophy of the breast[3] and referred her to Dr. Deanna Armstrong, a plastic surgeon. Dr. Armstrong, after examining Milone, recommended a bilateral breast reduction. After meeting with Dr. Armstrong, Milone applied for pre-certification for the bilateral breast reduction. Exclusive denied her claim stating that the requested procedure was not a covered benefit.

The parties agree that Milone's condition was not necessitated by, nor otherwise associated with, cancer. The parties also agree that the bilateral breast reduction was a "medical necessity" as defined in the Plan.

Milone appealed the denial of her claim. Her first appeal was to the Site Committee, then to the Corporate Appeal Committee, and finally, to the Benefits Review Committee. At all stages of the administrative appeal process Milone's claim

---

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

[3] A physical condition characterized as enlarged breasts which contributed to the stress upon the neck, back, and arms.

was denied.  The denial was based upon exclusion (tt)[4] which provided that there was no coverage for "breast augmentation or reduction not associated with cancer of the breast."

## DISCUSSION

## Welfare Plan Contract

At issue in this case is Exclusive's application of the Plan's definition of medical necessity and exclusions (q) and (tt).  The Plan defines medical necessity as follows:

A medically necessary service or supply means one which is ordered or authorized by the Primary Care Physician, and which the Primary Care Physician, our medical staff or our Medical Director and/or a qualified party or entity selected by us determines is:

(a)     provided for the diagnosis or direct treatment of an injury or sickness;

(b)     appropriate and consistent with the symptoms and findings or diagnosis and treatment of the member's injury or sickness;

(c)     provided in accord with generally accepted medical practice on a national basis; and

(d)     the most appropriate supply or level of service which can be provided on a cost-effective basis (including, but not limited to, inpatient vs. outpatient care,

---

[4]The parties have referred to the exclusion as both (tt) and (ss); the controlling plan document refers to the exclusion as (tt).  See Exhibit Appendix, Exhibit 201 at 29.  Accordingly, we shall refer to the exclusion as (tt).

> electric vs. manual wheelchair, surgical vs. medical or other types of care).
>
> The fact that the member's physician prescribes services or supplies does not automatically mean such services or supplies are medically necessary and covered by the Contract.

Exhibit Appendix (EA), Exhibit 201 at 6. As previously stated, the parties are in agreement that Milone's condition was a "medical necessity" as defined above.

Turning to the relevant exclusions and limitations which provide no coverage, the Plan reads as follows:

### Exclusions and Limitations

We will not pay for:

(q)    cosmetic or reconstructive surgery[5] (or any treatment resulting therefrom).

Id. at 28.

(tt)    breast augmentation or reduction not associated with cancer of the breast.

---

[5] Cosmetic or reconstructive surgery means any surgical procedure performed primarily:

(a)    to improve physical appearance or to change or restore bodily form without materially correcting a bodily malfunction . . .

EA, Exhibit 201 at 3.

Id. at 29.

Simply stated, the issue presented is whether a reasonable person could conclude that the Plan does not cover Milone's breast augmentation or reduction surgery where it was deemed to be "medically necessary," but nonetheless not associated with cancer of the breast.

# I.

## A.    Standard of Review

ERISA does not specify a standard of review; however, the Supreme Court has held that a district court reviewing a denial of benefits should use a de novo standard of review unless the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Donaho v. FMC Corp., 74 F.3d 894, 897 (8th Cir. 1996) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d. 80 (1989)).  If discretionary authority is given to the plan administrator, the court reviews the plan administrator's decision for abuse of discretion.  See id. at 898.  It is conceded that Exclusive did have discretionary authority, thus the deferential standard of "abuse of discretion" applies.[6]

---

[6]Although Exclusive is a wholly owned subsidiary of Mutual of Omaha Insurance Company, the parties have not addressed a conflict of interest which may exist in this situation.  See Schatz v. Mutual of Omaha Insurance Company, 220 F.3d 944, 948 (8th Cir. 2000).  The parties also have not addressed whether this conflict of interest, if it exists, actually caused a serious breach of the plan administrator's fiduciary duty to Milone.  See id.  Accordingly, because these issues were not addressed we shall not consider applying a less deferential standard of review.

We review de novo the question of whether the district court applied the correct standard of review for evaluating the administrator's interpretation of the ERISA plan. See Davolt v. The Executive Committee of O'Reilly Automotive, 206 F.3d 806, 809 (8th Cir. 2000) (citing Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998)). Based upon such review, including the district court's thorough opinion, we hold that the district court properly applied the abuse of discretion standard.

The appropriate inquiry is whether the decision by the plan administrator to deny benefits is "extraordinarily imprudent or extremely unreasonable." Lutheran Medical Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters, & Engineers Health & Welfare Plan, 25 F.3d 616, 620-21 (8th Cir. 1994) (citing Cox v. Mid-American Dairymen, Inc., 965 F.2d 569, 572 (8th Cir. 1992) (quoting George C. Bogert & George T. Bogert, The Law of Trusts and Trustees § 560 at 201-204 (rev. ed. 1980))). The reasonableness of Exclusive's actions is determined by whether the decision to deny Milone's pre-certification was supported by substantial evidence, meaning more than a scintilla but less than a preponderance. See Schatz v. Mutual of Omaha Insurance Company, 220 F.3d 944, 949 (8th Cir. 2000) (citing Donaho v. FMC Corp., 74 F.3d 894, 898-901 (8th Cir. 1996)). During our inquiry, "[w]e consider only the evidence that was before the administrator when the claim was denied." Sahulka v. Lucent Technologies, 206 F.3d 763, 769 (8th Cir. 2000) (citing Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998)). Here, exclusion (tt) was utilized by Exclusive to deny benefits for a medically necessary procedure. We will require that the record contain substantial evidence to support this interpretation of the Plan.

Dr. Mark Pilley, a member of Exclusive's Benefit Review Committee, testified that exclusion (tt) was written to allow "[c]osmetic treatment of the patient who has had breast cancer." Joint Appendix at 191. Exclusion (q) of the Plan would deny benefits for all cosmetic surgery. The district court found that exclusion (tt) was intended to

comply with state law which required cosmetic treatment of a patient with breast cancer. The trial court found that without the addition of exclusion (tt), which allows cosmetic surgery in cases of breast cancer, the Plan would be in violation of this state law.

Despite knowing the background of exclusion (tt), Exclusive contends that the exclusion was designed to bar coverage for all breast augmentations or reductions, including those that were medically necessary, unless they were associated with cancer of the breast. Exclusive supported this interpretation with limited testimony concerning the annual application of exclusion (tt), stating that one to two cases were denied each week. This conclusory statement is not supported by facts which would show whether or not such denials were for claims involving simply cosmetic surgery or surgery required by reason of medical necessity. Absent such evidence, the statement lacks probative value to explain Exclusive's application of the terms of the Plan. The only relevant inquiry, according to Exclusive, is a review for cancer relatedness. Exclusive argues that if there is no cancer there is no coverage.

The evidence established that Exclusive granted benefits to three other women who requested breast reduction surgery in non-cancerous situations. The evidence also established that Exclusive went beyond a simple cancer review before denying benefits in this case. For example, Exclusive made use of the term "medical necessity" throughout the review of Milone's claim and made treatment suggestions to Milone's treating physician. Exclusive explained this expanded examination by stating that such procedure was utilized to provide Milone with complete and thorough medical treatment. We do not fault such a purpose.

Having reviewed the evidence, we find that the record in this case does not contain substantial evidence to support Exclusive's interpretation of the Plan. We also find that the purpose of exclusion (tt) was to permit cosmetic surgery for victims of

breast cancer. Accordingly, we conclude the district court did not err in its detailed findings that Exclusive's denial was arbitrary and capricious.

We are not unmindful of the fact that, read in isolation, exclusion (tt) would by its own terms deny benefits (for breast augmentation or reduction) to any female suffering from breast disease of whatever kind as long as those diseases were not cancer related. This was the argument of counsel for Exclusive at oral argument. As stated, the evidence indicates that claims for the breast augmentation or reduction procedure were denied in one or two cases per week. A thorough search of the record facts fails to reveal how many of such cases were "medically necessary" or were simply for cosmetic surgery unrelated to cancer.

The trial court in its analysis determined that Exclusive's interpretation of the Plan was unreasonable. The court also applied the five factors set forth in Finley v. Special Agents Mut. Benefit Ass'n, 957 F.2d 617 (8th Cir. 1992). Those factors are: (a) whether the Committee's interpretation is consistent with the goals of the Plan; (b) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; (c) whether the Committee's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (d) whether the Committee has interpreted the relevant terms consistently; and (e) whether the interpretation is contrary to the clear language of the Plan. See id. at 621.

We do not believe that the many women who have breast disease unrelated to cancer were intended to be excluded from the Plan where it was medically necessary to have such corrective surgery. We conclude that the court's application of Finley is not clearly erroneous.

A finding that Exclusive's denial was arbitrary and capricious does not end our analysis. We now turn to whether the Plan covers Milone's requested procedure. As stated above, the parties agree that Milone's requested procedure was "medically

necessary" as defined by the Plan.  Accordingly, we conclude that the district court did not err in granting benefits to Milone.

## II.

### A. Attorney Fees

Exclusive also argues that the district court abused its discretion in awarding Milone attorney fees and costs.  We affirm.

Pursuant to ERISA, an award of attorney fees and costs are discretionary.  See 29 U.S.C. § 1132(g); Lutheran Medical Ctr. of Omaha, Neb., 25 F.3d at 623.  We review the district court's decision to award attorney fees and costs under an abuse of discretion standard, and reverse only if the record clearly shows an abuse of discretion. See id.

The district court awarded attorney fees in the amount of $11,442.75, and taxable court costs of $962.05.  This Court has previously stated that when determining whether to award attorney fees, the district court must consider "the degree of culpability or bad faith; the ability to pay an award of attorney fees; the deterrent effect an award would have on others; whether the attorney fees are requested to benefit the other plan participants or to resolve legal issues; and the relative merits of the parties' position."  Id. (citing Jacobs v. Pickands Mather & Co., 933 F.2d 652, 659 (8th Cir. 1991)).

Absent "special circumstances," a plan beneficiary who successfully enforces her rights under a plan should recover attorney fees.  See id.  The burden of establishing the "special circumstance" which would make the award of attorney fees inequitable rests upon the unsuccessful party.  See id.  Here, the district court

thoroughly analyzed each of the five <u>Jacobs</u> factors.  In addition, we find that Exclusive has failed to establish the existence of any "special circumstances."  Accordingly, we conclude that the district court's award of attorney fees and costs was not an abuse of discretion.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.