242 F.Supp.2d 629 (2002)
Dominic SCAGLIONE, Plaintiff,
v.
CIGNA HEALTHCARE OF ST. LOUIS, INC., et al., Defendant.
No. 4:00-CV-01674HEA.
United States District Court, E.D. Missouri, Eastern Division.
December 22, 2002.
*630 Mitchell D. Jacobs, Clayton, MO, for plaintiff.
*631 Terese A. Drew, Hinshaw and Culbertson, Kathleen R. Richards, Sandberg and Phoenix, Brent W. Baldwin, Lathrop and Gage, St. Louis, MO, Daniel K. Ryan, Hinshaw and Culbertson, Chicago, IL, Dennie M. Zankel, Williams and Venker, St. Louis, MO, for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
AUTREY, District Judge.
This matter is before the Court upon Complaint by Plaintiff alleging that Plaintiff, an employee of BetzDearborn, Inc., was a covered employee under a Health benefit plan which was administered by defendant.[1] Plaintiff further alleges that the benefit plan is one which is governed by the Employee Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Jurisdiction is conferred upon the Court pursuant to a Notice of Removal under 28 U.S.C. § 1441(b) and federal question jurisdiction under 28 U.S.C. § 1331 AND 29 U.S.C. § 1001 et seq.
On November 5, 2001 the parties agreed to submit briefs on the salient issues and facts in lieu of trial. Subsequent thereto, and after a number of extensions of time to file the briefs, Plaintiff filed its trial brief (# 54) on May 10, 2002. Defendant also filed its "Brief In Support Of Judgment in Its Favor And Against Plaintiff (# 55) on May 10, 2002. Both were filed contemporaneously with a "Joint Stipulations Of Fact"(# 56). The Plaintiff filed a "Reply to Defendant's Trial Brief (# 73) on May 30, 2002. The Defendant then filed it's "Response To Plaintiffs Reply To Defendant's Trial Brief (# 75) on June 7, 2002. On October 3, 2002 this matter was transferred from the Honorable Donald J. Stohr to the undersigned.

BACKGROUND[2]
Dominic Scaglione was an employee of BetzDearborn, Inc. His employer provided an employee health benefit plan (the "Plan") which was administered by the Defendant as claims administrator with respect to medical benefits. The medical benefits under the Plan were selffunded by the employer(Exh. D, ¶ 2).
During the relevant time period Plaintiff sought medical treatment for a back ailment. As required by the Plan, Mr. Scaglione received authorization from the Plan administrator to undergo back surgery. Rather than proceed with the more invasive back surgery, Plaintiff sought approval from defendant for a procedure known as the Vertebral Axial Decompression program("VAX-D"). This is a mechanical traction procedure[3] that is less expensive than surgery.
The Plan granted the Defendant discretion to determine eligibility for benefits under the Plan. Upon review of the Plaintiffs request for payment for the VAX-D treatment the request was denied on the ground that the VAX-D treatment was "unproven technology". Mr. Scaglione properly appealed the denial and Defendant denied the appeal, finding that "coverage for the VAX-D treatment has been denied due to no long-term studies showing efficacy". The Plaintiff appealed this *632 decision and payment was again denied. The Defendant concluded that:
The benefits that CIGNA HealthCare of St. Louis, Inc. administers on behalf of your employer, BetzDearborn, indicate that `No payment will be made under the CIGNA medical plans for the expenses incurred for you or your covered dependents:
For or in connection with experimental procedures or treatment methods not approved by the American Medical Association or the appropriate medical specialty society'. (The Plan, page 3-27)
Even though his requests for approval had been denied, the Plaintiff went forward with the VAX-D treatments and program. Prior to the treatment, however, he treated with Dr. Jonathan Gold. Dr. Gold performed certain diagnostic tests which included an MRI on November 1, 1999 and a Myelogram. These tests were indicative of a herniated nucleus pulposis at two different disk levels. As a result of these findings Mr. Scaglione was scheduled for emergency surgery on November 23, 1999. Plaintiff did not undergo the surgery, but rather treated with Dr. Ferris who provided VAX-D treatment for Plaintiff. Upon examination of Mr. Scaglione, Dr. Ferris diagnosed him as suffering from degenerative disc disease with L4-5 herniation and L5-S1 posterior facet syndrome.
Defendant made certain payments to Dr. Ferris for the treatment of Mr. Scaglione in relation to the VAX-D treatment. There have been payments in other instances totalling $36,092. The Defendant made demand to Dr. Ferris for the return of the payments for the VAX-D treatments and procedures. The aggregate cost of treatment to the Plaintiff is $2880.00.
Prior to Plaintiffs request for payment of his claim for VAX-D treatment the Defendant had paid for treatment on six other claims and has paid for treatment on eight claims after the denial of Plaintiffs request. [Deposition of Angela Moses, page 6, line 19 through page 7 line 10 and page 8, lines 12-23]. In addition, the record discloses that on December 14, 1999, the Defendant paid $108 toward treatment provided to Plaintiff by Dr. Ferris. Explanation of Benefits [Joint Docs, document number 7].

DISCUSSION

A. Standard of Review
Actions, such as this, brought pursuant to 29 U.S.C. § 1001 et seq (ERISA) are granted judicial review of medical benefit denial decisions. The general view is that the district court reviewing a denial of benefits should use a de novo standard of review. Milone v. Exclusive Healthcare, Inc., 244 F.3d 615 (8th Cir.2001).[4] The Supreme Court has recognized, however, that a deferential standard of review is appropriate under 29 U.S.C. § 1132(a)(1)(B). Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The deferential standard of review must be applied if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co., at 115, 109 S.Ct. 948. If discretionary authority is granted to the plan administrator, it is incumbent upon the reviewing court to review the plan administrator's decision for abuse of discretion. See id. at 898. Here, the parties have agreed, through their Joint Stipulations of Fact that defendant, the Plan administrator, *633 had discretion to determine eligibility for benefits. Thus, the deferential standard of review is utilized in assessing the validity of the decision of the Plan administrator herein. In such instance, the question becomes whether the plan administrator acted reasonably, or whether it acted arbitrarily and capriciously in the denial of benefits. Finley v. Special Agents Mutual Benefit Association, Inc., 957 F.2d 617 (8th Cir.1992); Schatz v. Mutual of Omaha Insurance Company, 220 F.3d 944 (8th Cir.2000). The analysis of the reasonableness of the Plan administrator's denial of benefits is guided by a determination of whether the decision to deny benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance. Id. In assessing the evidence the reviewing court may consider both the quantity and quality of evidence before a plan administrator. Donaho v. FMC Corp., 74 F.3d 894, 900 (8th Cir.1996).

B. Application of the Standard
The undisputed facts established by the Joint Stipulation of Facts demonstrates that the Plaintiff, Dominic Scaglione, was an employee of BetzDearborn, Inc. and that he participated in a employee health care benefit plan. The Plan was administered by the Defendant. The parties have agreed that the Plan administrator had discretion to determine eligibility for benefits. The Defendant argues that discretion was properly exercised in the denial of benefits to Plaintiff regarding their refusal to provide coverage for the VAX-D treatment he, Mr. Scaglione, received. Defendant asserts that there is a reasonable basis for the denial of the claim. It enumerates several points in support of its conclusion. The most significant points are that the Food and Drug Administration (FDA) has not authorized the VAX-D treatment to be marketed as a treatment for herniated disks and that research by the defendant corroborates the findings by the FDA. This position is asserted and maintained even though the evidence is unrefuted and uncontradicted that Defendant paid VAX-D claims to other beneficiaries suffering from, presumably, the same or similar ailment as Plaintiff on six occasions prior to the Scaglione claim and paid eight claims for VAX-D treatment after the Scaglione claim. [Deposition of Angela Moses, page 6, line 19 through page 7 line 10 and page 8, lines 12-23]. There is also evidence in the record that defendant approved treatment for other patients which was demonstrated by the explanation of benefits for the patients and VAX-D treatment. Level 1 Appeal, [Joint Docs, document number 2].
In Milone, the facts were closely related to those presented here. There, the plaintiff challenged the denial of her claim for a breast reduction. She experienced neck, back, and headache pain associated with bilateral hypertrophy of the breast. The administrator conceded that plaintiffs augmentation was a "medical necessity" due to the pain and complications she was experiencing, but denied the claim based upon the language of the plan. One clause of the plan allowed for augmentation in the case of breast cancer. Another clause denied claims for cosmetic surgery. Although the plaintiff had not suffered from breast cancer, the Eighth Circuit noted that the plan administrator granted benefits to three other women who requested breast reduction surgery in non-cancerous situations. The evidence also established that the administrator went beyond a simple cancer review before denying Plaintiff benefits. The Court concluded the record did not contain substantial evidence to support the plan administrator's interpretation of the plan and that the denial was arbitrary and capricious.
*634 Here, Plaintiff complied with the Plan procedures for securing approval of treatment for his back ailment. Treatment through surgery was approved by the Plan administrator. [Joint Stipulation of Facts, Doc. # 56, par. 2]. However, upon evaluation by Dr. Ferris, plaintiff opted for the VAX-D treatment which was less expensive and less invasive. On two occasions the Defendant denied Plaintiffs appeal. On six occasions prior to Plaintiffs claim, amounts were paid on the claims of other patients covered by the Plan and payments were made to eight other patients after the claim of Mr. Scaglione was denied, leaving Mr. Scaglione in a position similar to the Plaintiff in Milone. The evidence submitted by the Defendant to explain these payments is that there was an error in the code provided to Defendant for payment by Dr. Ferris. [Joint Submission of Documents, Def. exhibit D, Affidavit of Nancy Curtiss-Hannan]. Knowing of this alleged error the Defendant continued to authorize payment for the VAX-D treatment to Dr. Ferris. At the very least these curious circumstances call into question, the consistent interpretation of the plan relative treatment for back injuries that might qualify for VAX-D treatment, just as there was evident inconsistency in interpretation by the plan administrator in Milone, Id. at 619. Such inconsistency in plan interpretation is clearly not reasonable. The Defendant's suggestion that there was an error in the CPT/payment codes submitted by Dr. Ferris but then allowing the error to continue after denial of Plaintiffs claim is lacks any credibility which would explain the Defendant's denial of the Scaglione claim.[5]
Accordingly, the court finds that the denial of the Scaglione claim was arbitrary and capricious.

C. Attorney Fees
Plaintiff has requested the court to grant him his attorney fees as the prevailing party in the matter. In support of this demand he has submitted his fee agreement and a billing for professional services which totals $12,769.46[6] for a claim which totals $2,880.00. [Doc.# 74].
The fee shifting provision of ERISA gives the court discretion to award attorney fees to "either party". 29 U.S.C. § 1132(g). Since attorney fees are not presumptively awarded in ERISA cases, the court will only be observed to have abused its discretion when there is no factual support for its decision, or when it fails to follow applicable law. Martin v. Arkansas Blue Cross and Blue Shield, 299 F.3d 966 (8th Cir.2002).
The court best exercises its discretion by applying the five factors set out in Lawrence v. Westerhaus, 749 F.2d 494 (8th Cir.1984) and other relevant considerations as general guidelines for determining when a fee is appropriate. See Martin, Id. The factors to be considered are: (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future *635 deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. Westerhaus 749 F.2d at 496.
Here, the Plan agreed in spirit to expedite the resolution of the issues in this case. They agreed to submit the matter on a Joint Stipulation of Facts and jointly stipulated documents. Relatively speaking, the exhaustion of appeals by Plaintiff was quick, which could only have been accomplished with the cooperation of the Defendant/Plan administrator. The parties agreed upon a relatively simultaneous briefing schedule.
There is no allegation or evidence to suggest that the Plan did anything to hinder the interests of a participant in the employee benefit plan they administered, although it did prohibit Mr. Scaglione from acquiring the maximum benefit that his Plan allowed, which is to say, payment for treatment received and needed at the time. This amount, however, was not great. It was only $2880.00, a pittance in comparison to the total amount of claims that are surely made against the Plan. Furthermore, there is nothing in the record which gives any indication that the results of this litigation will be of great benefit to plan members other than the Plaintiff.
The dispute over such a small amount required the Plaintiff to secure an attorney and spend numerous hours prosecuting his Complaint in this district. If attorney fees were to not be awarded in this instance, it could have a chilling effect on other plan participants and their interest in the pursuit of similarly small claim amounts. Anyone faced with the prospect of paying their own attorney fees of similar or greater amount as in this case may very well opt out of pursuing their claim. It is doubtful that anyone might observe this to be part of the grand design of our system of justice.
Accordingly, the request for legal fees in the amount of $12, 769.46 is granted in consideration of the holding in Martin, Id.

CONCLUSION
Based upon the foregoing analysis, Defendant is hereby ordered to pay Plaintiffs claim in the amount of $2880.00 and his attorney's fees in the amount of $12,769.46.
A separate order in accord with this order is entered this date.
NOTES
[1] On May 15, 2002, by stipulation(# 71) the parties agreed to substitute Connecticut General Life Insurance Company as the proper party defendant in this matter.
[2] The facts set forth herein are taken from the Joint Stipulation of Facts provided by the parties as well as depositions and exhibits provided to the Court.
[3] In this procedure, the patient is placed in traction using a motorized table with a harness and a sliding lower section.
[4] Milone was subsequently reversed for reasons not related to the standard of review, but rather that attorneys fees should not be presumptively awarded to plaintiffs. See, Martin v. Arkansas Blue Cross And Blue Shield, 299 F.3d 966 (8th Cir.2002).
[5] The record before the court is devoid of any evidence that is strongly supportive of any attempt by defendant to exercise any significant procedures which would monitor and alleviate the alleged problem with payment codes. Evidence evincing such attempts would give considerable weight to Defendant's argument and their stated basis for refusal of the claim.
[6] Simple mathematics demonstrates that the legal costs/fees of Plaintiff are in excess of four times the amount of the claim lodged by the Plaintiff, but are well substantiated by the retainer agreement and the highly specific time sheet submitted by plaintiff's counsel, Mr. Mitchell Jacobs.