221 F.Supp.2d 1010 (2002)
Marion LEONARD, Plaintiff,
v.
SOUTHWESTERN BELL CORPORATION DISABILITY INCOME PLAN, et al. Defendants.
No. 4:00CV00923ERW.
United States District Court, E.D. Missouri, Eastern Division.
September 11, 2002.
S. Sheldon Weinhaus, Partner, Weinhaus and Dobson, St. Louis, C. David *1011 Whipple, David W. Whipple, Mark D. Chuning, Whipple Law Firm, Kansas City, William T. Payne, Schwartz and Steinsupir, Pittsburgh, PA, for Marion Leonard, plaintiff.
Richard J. Pautler, Amie E. Needham, Thompson Coburn, Stephen B. Higgins, Thompson Coburn, St. Louis, for Southwestern Bell Corporation Disability Income Plan, Southwestern Bell Corporation Pension Benefit Plan, Southwestern Bell Corporation, as Plan Administrator and a Named Fiduciary of Southwestern Bell Corporation Disability Income Plan and of Southwestern Bell Corporation Pension Benefit Plan aka SBC Communications, Inc., Benefit Plan Committee of SW Bell Corporation Disability Income Plan, as Fiduciaries of Southwestern Bell Corporation Disability Income Plan, Benefit Plan Committee of SW Bell Corporation Pension Benefit Plan, as Fiduciaries of Southwestern Bell Corporation Pension Benefit Plan, Southwestern Bell Telephone L.P., as a participating company and a Named Fiduciary in the Southwestern Bell Corporation Disability Income Plan and Southwestern Bell Corporation Pension Benefit Plan, Benefit Plan Committee of Southwestern Bell Telephone Company, as the Named Fiduciary designated by Southwestern Bell Telephone Company with respect to claims and administration of benefits of employees of Southwestern Bell Telephone Company, defendants.

MEMORANDUM AND ORDER
WEBBER, District Judge.
Before the Court is Defendant's Motion for Summary Judgment and Plaintiff's similar Cross-Motion. [doc. # 74]. For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

I. BACKGROUND FACTS
The facts in this case are undisputed. Plaintiff was a Southwestern Bell Telephone Co. employee and a participant in both the Southwestern Bell Corporation Pension Benefit Plan ("Pension Plan") and in the Southwestern Bell Corporation Disability Income Plan ("DIP"). The Pension Plan and the DIP provide disability benefits under certain circumstances.

A. The Southwestern Bell Corporation Disability Income Plan ("DIP")
At the times relevant to this litigation, Section 3.11 of the Plan Text of the DIP provided:

Payments under Law
In case any benefit, which the Committee or the Claims Administrator, as applicable, shall determine to be of the same general character as a payment provided by the Plan, shall be payable under any law now in force or hereafter enacted to any Employee of a Participating Company, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan, provided however, that no benefit payable under the Plan shall be reduced by reason of any governmental benefit payable on account of military service. (emphases added).
The Summary Plan Description for the DIP also states that the Plan provides those covered with a long term disability benefit of 50% of the basic wage rate reduced by benefits the person covered receives from other sources of disability income, including "Workers' Compensation or similar disability benefits." (emphasis added).
Section 5.4 of the DIP grants complete discretion to the Claims Administrator to interpret the provisions of the Plan:
The Claims Administrator shall have full and exclusive authority and discretion to grant and deny claims under the Plan, including the power to interpret the *1012 Plan and determine the eligibility of any person to participate in and receive benefits under the Plan.

B. The Southwestern Bell Corporation Pension Benefit Plan (The "Pension Plan")
A person receiving benefits under the DIP may stop receiving DIP benefits and begin receiving a Disability Pension under the Pension Plan if she is "disabled (as defined in the Pension Plan)", has fifteen years of Pension Eligibility Service (also as defined in the Pension Plan) and if she is not yet eligible to receive a Service Pension.
Similar to the DIP, the Pension Plan contained provisions providing for offset of worker's compensation benefits. Section 6.8.1. of the text of the Pension Plan provided:
In the event any benefit which the Committee shall determine to be of the same general character as a benefit provided under the Plan, shall be payable under any law now in force or hereafter enacted to any Employee of a Participating Company or to his Eligible Beneficiary, Designated Beneficiary or Surviving Annuitant under such law, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan.
The Summary Plan Description for the Pension further clarified the company's position with respect to worker's compensation awards by explaining that if a covered person received a state worker's compensation benefit for the same disability for which she was receiving a disability pension, the disability pension amount will be reduced by the amount of the worker compensation benefit. Another paragraph in the Pension Plan explains that pensions paid under the Social Security Act or the Railroad Retirement Act would not be offset, but that provision emphasized that any other payment of benefits like those provided under the Pension Plan would be reduced.
As with the DIP, the Pension Plan grants full discretion to the Plan Administrator to interpret the provisions of the Plan. Section 3.5.4 of the plan provides:

Claim Decision-Making Authority
The Committee and each organizational committee or subcommittee to whom claim determination or review authority has been delegated shall have full and exclusive authority and discretion to grant and deny claims under the SBCPBP, including the power to interpret the SBCPBP and determine the eligibility of any individual to participate in and receive benefits under the SBCPBP.

C. The offsets
Plaintiff was injured in 1996 and received a Worker Compensation award in February of that year. Beginning in July 1997, Plaintiff's benefits under both the Pension Plan and the DIP were reduced by the amount of her Worker Compensation award. The benefits were reduced based on the above language of the plan documents.
Plaintiff then filed this lawsuit under the Employee Retirement Income Security Act (ERISA), specifically 29 U.S.C. § 1132(a), to recover benefits allegedly due to her under the terms of the plan. Both parties have now moved for summary judgment.

II. SUMMARY JUDGMENT STANDARD
The standards for granting a motion for summary judgment are well-settled. A court may grant a motion for summary judgment only if all of the information *1013 before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Granting summary judgment is not a disfavored procedural shortcut, but "an integral part of the federal rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).
The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be "no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added by Supreme Court). Material facts are those that might affect the outcome of the suit under the governing law. Id. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548.
The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. Anderson, 477 U.S. at 249, 106 S.Ct. 2505. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir.1995). The non-moving party is given the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 586, 106 S.Ct. 1348. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." Kampouris v. St. Louis Symphony Soc., 210 F.3d 845, 847 (8th Cir.2000). The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." Id.

III. ANALYSIS
Under ERISA, a plan beneficiary has the right to judicial review of a benefits determination. See 29 U.S.C. § 1132(a)(1)(B). When the plan gives the administrator "discretionary authority to determine eligibility benefits or to construe the terms of the plan," this Court must review the administrator's decision for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Under that standard, the administrator's decision will stand if a reasonable person could have reached a similar decision given the evidence before him. Sahulka v. Lucent Technologies, Inc., 206 F.3d 763, 769 (8th Cir.2000). This Court must not substitute its own judgment for that of the administrator. *1014 Id. This deferential standard reflects the courts' general hesitancy to interfere with the administration of a benefits plan. Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir.1998).
The Eighth Circuit has outlined a five-factor test this Court considers in deciding whether the administrator abused his discretion in interpreting the plan: (1) whether the interpretation is consistent with the goals of the plan; (2) whether the interpretation renders any language in the plan meaningless or makes the plan internally inconsistent; (3) whether the interpretation conflicts with ERISA; (4) whether the interpretation has been consistent; and (5) whether the interpretation is contrary to the clear language of the plan. Shelton v. ContiGroup Cos., 285 F.3d 640, 643 (8th Cir.2002).
The parties neither dispute the language of the governing plans, nor disagree that the abuse of discretion standard governs. In fact, a careful reading of the parties' summary judgment filings reveals that they disagree not on the facts underlying this dispute, but only on the application of the five factors used to determine whether the plan administrators abused their discretion in offsetting Ms. Leonard's disability benefits by the amount of her worker's compensation award. Because there is no genuine issue of material fact and the parties disagree only on the application of the legal "abuse of discretion" standard, resolving this case at the summary judgment stage is appropriate. The Court now turns to the abuse of discretion standard, mindful that the Court must defer to the interpretation of the administrator is his interpretation was reasonable, regardless of whether it was the best one. Donaho v. FMC Corp., 74 F.3d 894, 899 (8th Cir. 1996).
This Court agrees with Defendants that the administrator's interpretation was consistent with the goals of the plan. Under the DIP, an employee who is partially disabled, like Plaintiff, and who has five years net credited service receives 100% of her basic wage rate for 13 weeks and half of her basic wage rate for an additional 39 weeks. The plans do not contemplate, however, that a person in Plaintiff's position would get not only 100% of her wage rate under the DIP, in addition to money for worker's compensation. The plan's goal was certainly not to place disabled people in a better financial position than they were in before the disability. Plaintiff has pointed to nothing to suggest the administrator's construction was unreasonable.
The clear language in the plans also indicates that the administrator's interpretation offsetting Plaintiff's benefits did not render the language in the plan meaningless. Plaintiff seems to argue that the Defendant's construction makes the phrase "of the same general character" in the text of the plans meaningless and redundant if "benefits payable under law" are offset. See DIP § 3.1.1; Pension Plan § 6.8.1. This Court disagrees. The administrator of these plans is entitled to determine whether a benefit is "of the same general character as a benefit provided under the Plan." Defendants have not decided that every benefit payable under law is of the same general character as those provided under the plan  Medicare and Medicaid are examples. The phrase "of the same general character" does not have the same meaning as "payable under law," but merely a subset of benefits payable under lawand the administrator has the responsibility to determine the type of benefits falling within that subset. Plaintiff has produced no evidence that the administrator's interpretation would make the plan language meaningless.
Further, Plaintiff can point to no conflict with ERISA. The Supreme Court in Firestone *1015 Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) declared that where a plan like this gives the administrator clear authority to interpret the plan's provisions, a court should only disturb his discretion when he has abused it. There is no statutory provision that prohibits offsets; the only issue for this court is the abuse of discretion standard.
Defendants have also proffered evidence in their motion, reply and attached exhibits to support their contention that Southwestern Bell has consistently interpreted their pension plans to require offsets of this nature. In one instance, an arbitrator found that Southwestern Bell's benefits committee's policy of authorizing pension payments only in excess of worker's compensation awards had remained unchanged since the plan's inception in 1913. A federal court in Texas similarly found that offsets were the norm.[1] Cynthia Reed, Southwestern Bell Telephone Company's area manager for benefit plans in the mid 1990's, filed an affidavit attesting that she could not recall a single case in her 16-year career where the plan did not take an offset. Plaintiff has only come forward with two individuals whose benefits were not offset. Those individuals were part of a class action in one of the Hechenberger trilogy cases. Defendants here took the offsets but restored them to those individuals as part of a settlement. In possession of several hundred individuals who were subject to the offset, however, Plaintiffs have not met their burden of production on lack of consistency by finding only 2 individuals in unique circumstances who obtained both workers compensation and disability benefits.
Finally, the Court finds that the interpretation offsetting benefits is in no way contrary to the clear language of the plan. Southwestern Bell could not have made its intention to offset the benefits in both plans more explicit than it did. The Summary Plan Description of both plans alerts all participants that benefits will be reduced by workers compensation awards.
Based on these considerations, this Court concludes that, as a matter of law, the plan administrators did not abuse their discretion in interpreting these plans to reduce Plaintiff's disability payments by the amounts of worker's compensation awards.
Plaintiff now, for the first time, argues that she is entitled to summary judgment on the theory that attorney's fees in workers compensation proceedings are not of the same general character as plan benefits, and that the administrators abused their discretion in applying offsets in the amount of attorney's fees she paid as part of the worker compensation proceedings. Unfortunately for Plaintiff, it is too late to argue such a theory. She didn't raise it in either her initial or First Amended Complaint, and the time to amend ran out in January 2001.
Therefore,
IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [doc. # 74] is GRANTED.
IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Summary Judgment is DENIED.
IT IS FURTHER ORDERED that all other pending motions in this case are DENIED AS MOOT.
NOTES
[1] CWA and Nancy Bellah v. Southwestern Bell Corp. Pension Plan, Cause No. A-92-CA-357 (W.D.Tex.1994).