# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

No. 02-3559

Marion Leonard,                                    *
                                                   *
    Plaintiff - Appellant,                         *
                                                   *
                                                   *   Appeal from the United States
            v.                                *   District Court for the Eastern
                                                   *   District of Missouri
Southwestern Bell Corporation                      *
Disability Income Plan; Southwestern               *
Bell Corporation Pension Benefit Plan;             *
Southwestern Bell Corporation, as Plan             *
Administrator and a Named Fiduciary                *
of Southwestern Bell Corporation                   *
Disability Income Plan and of                       *
Southwestern Bell Corporation Pension              *
Benefit Plan, also known as SBC                    *
Communications, Inc.; Benefit Plan                 *
Committee of Southwestern Bell                     *
Corporation Disability Income Plan, as             *
Fiduciaries of Southwestern Bell                   *
Corporation Disability Income Plan;                *
Benefit Plan of Southwestern Bell                  *
Corporation Pension Benefit Plan, as               *
Fiduciaries of Southwestern Bell                   *
Corporation Pension Benefit Plan;                  *
Southwestern Bell Telephone, L.P., as              *
a participating company and a Named                *
Fiduciary in the Southwestern Bell                 *
Corporation Disability Income Plan                 *
and Southwestern Bell Corporation                  *
Pension Benefit Plan; Benefit Plan                 *
Committee of Southwestern Bell                     *

Telephone Company, as the Named           *
Fiduciary designated by Southwestern      *
Bell Telephone Company with respect        *
to claims and administration of                  *
benefits of employees of Southwestern   *
Bell Telephone Company,                          *
                                                                  *
        Defendants - Appellees.                   *

                                      ———————

                Submitted:   April 17, 2003

                       Filed:   September 2, 2003

                                      ———————

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

                                      ———————

MELLOY, Circuit Judge.

        Appellant Marion Leonard sued Appellees[1] alleging that they violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, by interpreting two employee benefit plans in a manner that reduced Leonard's benefits. In particular, Leonard challenged Appellees' contention that plan benefits may be reduced by the entire amount of a 1996 worker's compensation award that Leonard received. The district court granted Appellees' motions for summary judgment, and in doing so, denied Leonard's request to prohibit Appellees from offsetting the benefits owed under the plans. We affirm in part, but reverse the

———————

    [1]Appellees include the Southwestern Bell Corporation, the Southwestern Bell Corporation Pension Benefit Plan, the Southwestern Bell Corporation Disability Income Plan and other related entities, committees, and administrators. Southwestern Bell Telephone Company employed Mrs. Leonard at the time she became eligible for disability benefits. Unless describing the specific features of the two employee benefit plans at issue, we refer to these parties as Appellees or Southwestern Bell.

district court's decision to approve the offset amount. The offset amount should not include attorneys' fees and costs that Leonard incurred to obtain her 1996 worker's compensation award.

## I. Background

It is undisputed that Marion Leonard is entitled to disability benefits for injuries suffered while working for Southwestern Bell. Leonard was placed on leave in 1995 because of her injuries. She hoped to receive compensation for these injuries from two sources: worker's compensation and two employee benefit plans. The employee benefit plans in which she participated were the Southwestern Bell Corporation Disability Income Plan ("Disability Plan") and the Southwestern Bell Corporation Pension Benefit Plan ("Pension Plan"). After being placed on leave, Leonard initially received disability benefits from both plans. However, Southwestern Bell later decided that benefits owed under the Disability and Pension Plan should be reduced by the entire amount of Leonard's worker's compensation award. Leonard was informed that she would not receive any further benefits under the plans until the entire amount of her worker's compensation award had been withheld.

Leonard brought this action, and the district court ruled on two separate motions for summary judgment. The first motion for partial summary judgment, decided on May 30, 2001, considered whether Southwestern Bell was estopped from arguing that ERISA plan benefits could be reduced by the amount of Leonard's worker's compensation. Leonard's estoppel arguments were based on Southwestern Bell actions in the "Hechenberger Trilogy"[2] of cases.

_____

[2] The Hechenberger Trilogy refers to the following three cases brought in the United States District Court, Eastern District of Missouri, Eastern Division and all related district court and appellate court opinions, as well as settlement negotiations in these cases. Hechenberger v. Western Elec. Co., No. 82-0145C(3); Wilken v.

The district court determined that the Hechenberger Trilogy of cases did not address the type of offsets at issue in Leonard's case. The Hechenberger Trilogy directly concerned only reductions of worker's compensation payments by the amount of ERISA benefits that had already been paid ("counterclockwise offsets"), not reductions of ERISA benefits by the amount of worker's compensation payments that had been received ("clockwise offsets"). While the district court acknowledged that the net result of both practices was the same, i.e., in both situations the employees received the same amount of compensation, it determined that the distinction between clockwise and counterclockwise offsets was a distinction that mattered (at least when considering the Hechenberger Trilogy's preclusive effect). As a result, the district court granted Southwestern Bell's first motion for partial summary judgment and determined that the Hechenberger Trilogy did not preclude Southwestern Bell from arguing that clockwise offsets were acceptable under the terms of the Disability and Pension Plans.

The district court allowed discovery to continue and, on September 11, 2002, granted Southwestern Bell's second motion for summary judgment. In doing so, the district court approved the decision to reduce benefits owed under the plans by the entire amount of Leonard's worker's compensation award. The district court determined that Southwestern Bell did not abuse its discretion when it determined that worker's compensation payments were of the "same general character" as the disability benefits provided by the plans. Additionally, the district court declined to consider whether attorneys' fees should have been included in the offset because the attorneys' fees issue had not been properly raised.

On appeal, there are three issues this Court must decide. The first is whether the district court properly determined that the Hechenberger Trilogy only addressed

---

AT&T Techs., Inc., No. 83-2198C(3); and Clemens v. Southwestern Bell Tel. Co., No. 84-0756-C(3).

counterclockwise offsets and therefore did not prevent Southwestern Bell from arguing that clockwise offsets were permissible. The second issue is whether the plan administrators' determination that worker's compensation awards were of the "same general character" as plan benefits constituted an abuse of discretion. The final issue is whether Southwestern Bell abused its discretion by including in the offset amount the attorneys' fees and costs Leonard paid to obtain her worker's compensation award.

## II. Standard of Review

"We review a grant of summary judgment de novo, applying the same standard as that applied by the district court." Hossaini v. Western Mo. Med. Ctr., 140 F.3d 1140, 1142 (8th Cir. 1998).

This circuit has not clearly stated whether we review a district court's decision on the applicability of the collateral or judicial estoppel doctrines under an abuse of discretion or de novo standard of review. Other courts that considered this issue reached conflicting opinions. See Wright & Miller, Federal Practice and Procedure: Civil 3d §4416 n.35-37 (describing the differing opinions on how issue preclusion/collateral estoppel should be reviewed); §4477 n.9 (providing differing opinions on how judicial estoppel should be reviewed). We need not resolve the standard of review issue at this time. Even under the less deferential standard of review, the de novo standard, we do not find that collateral or judicial estoppel applies.

By contrast, we have clearly defined the standard for evaluation of a district court's review of an ERISA plan's administration. In Sahulka v. Lucent Techs., Inc., 206 F.3d 763, 767 (8th Cir. 2000), we stated:

> [T]his Court reviews de novo the district court's determination of the appropriate standard of review under ERISA. Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998).
>
> Under ERISA, a plan beneficiary has the right to judicial review of a benefits determination. See 29 U.S.C. §1132(a)(1)(B). The court reviews the denial of benefits for abuse of discretion when a plan gives the administrator "discretionary authority to determine eligibility benefits or to construe terms of the plan . . . . Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Under the abuse of discretion standard, "the plan administrator's decision to deny benefits will stand if a reasonable person could have reached a similar decision." Woo v. Deluxe Corp., 144 F.3d 1157, 1162 (8th Cir. 1998) (citation omitted). In evaluating reasonableness, the court determines "whether the decision is supported by substantial evidence, which is more than a scintilla but less than a preponderance." Id. (quotation omitted).

Id. at 767-768; see also Shelton v. ContiGroup Co., Inc., 285 F.3d 640, 642 (8th Cir. 2002) (discussing the standard of review under ERISA). In this case, both plans provide the plan administrators[3] with discretionary authority to determine eligibility and interpret the terms of these plans. As such, the appropriate standard of review for evaluating the decision to reduce plan benefits by the entire amount of the 1996 worker's compensation award is whether the plan administrators abused their discretion.

---

[3]The term "plan administrator" is used in this opinion to refer to the individual, committee, or subcommittee provided with the responsibility for interpreting the Disability or Pension Plans at issue in this case.

### III. Estoppel Arguments

Leonard argues that, based on principles of collateral and judicial estoppel, Southwestern Bell's actions in the "Hechenberger Trilogy" should preclude clockwise offsets (reducing plan benefits by the amount of worker's compensation received). We agree with the district court's rejection of Leonard's argument. The Hechenberger Trilogy dealt only with counterclockwise offsets (reducing worker's compensation benefits by the amount of plan benefits received), not with clockwise offsets like those at issue in this case.

The principle of collateral estoppel is part of a doctrine often referred to as preclusion or res judicata. The Supreme Court explained the characteristics of the res judicata doctrine in Baker by Thomas v. General Motors Corp.:

> "Res judicata" is the term traditionally used to describe two discrete effects: (1) what we now call claim preclusion (a valid final adjudication of a claim precludes a second action on that claim or any part of it) and . . . (2) **issue preclusion**, long called **"collateral estoppel"** (an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim) . . . .

522 U.S. 222, 233 n.5 (1998) (internal citations omitted) (emphasis added). The question in this case is whether issue preclusion prevents Southwestern Bell from arguing that the reduction of ERISA benefits by the amount of a worker's compensation award is proper. This circuit has defined the elements of issue preclusion as applying only when the party against whom preclusion is sought, was involved in a prior lawsuit and:

> (1)   the issue sought to be precluded [was] the same as that involved in a prior action;
>
> (2)   the issue [had been] actually litigated in the prior action;
>
> (3)   the issue [had been determined] by a valid and final judgment; and
>
> (4)   the determination [was] essential to the prior judgment.

Tyus v. Schoemehl, 93 F.3d 449, 453 (8th Cir. 1996). Our careful review of the Hechenberger Trilogy leads us to conclude that the issue before the court in those cases was only whether counterclockwise offsets were improper or prohibited by statute. While we acknowledge that a few select individuals in those cases may have been concerned about clockwise offsets (reductions in their plan benefits by the amount of worker's compensation awards they had or expected to receive) we are not convinced that this issue was squarely before the court or essential to the judgment in any of the three cases. Therefore, we conclude that the doctrine of issue preclusion does not apply in this case.

Leonard also argues that Southwestern Bell should be judicially estopped from arguing that the present, clockwise offsets were proper. The doctrine of judicial estoppel is a discrete doctrine different from issue preclusion. New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001). The purpose of the doctrine of judicial estoppel is to "protect the integrity of the judicial process." Bendet v. Sandoz Pharm. Corp., 308 F.3d 907, 910 (8th Cir. 2002) (citing New Hampshire, 532 U.S. at 749-50).

In general, the doctrine of judicial estoppel operates to "prohibit[] a party from taking inconsistent positions in the same or related litigation." Hossaini v. Western Mo. Med'l Ctr., 140 F.3d 1140, 1142-43 (8th Cir. 1998); see also New Hampshire, 532 U.S. at 750-51 (providing some of the factors that a court

should consider in determining whether the doctrine applies). For judicial estoppel to apply in this case, we would need to be convinced that Southwestern Bell clearly represented to the court in prior cases that it had no intention of engaging in clockwise offsets or that it made some other similar representation that caused the courts in the Hechenberger Trilogy, or other related cases, to refrain from addressing that issue.

Our review of these cases does not convince us that Southwestern Bell made such representations. Additionally, we see nothing in Southwestern Bell's arguments before this court that leads us to the conclusion that the "integrity of the judicial process" would be compromised by allowing Southwestern Bell to argue that the clockwise offsets in this case were proper. Having determined that neither collateral estoppel nor judicial estoppel applies, we affirm the district court's decision that the Hechenberger Trilogy does not preclude Southwestern Bell from arguing that it was appropriate to reduce Leonard's plan benefits by the amount of her 1996 worker's compensation award.

### IV. Same General Character

Leonard also argues that it was improper for the plan administrators to determine that her worker's compensation award was of the "same general character" as benefits provided under these plans. This determination is important because both plans allow benefits of the "same general character" to be offset against plan benefits owed:

**Southwestern Bell Corp. Disability Income Plan ("Disability Plan") § 3.11**

In case any benefit, which the Committee or the Claims Administrator, as applicable, shall determine to be **of the same general character as a payment provided by the Plan** . . . the excess only, if any, of the

amount prescribed in the Plan above the amount of such payment . . . shall be payable under the Plan . . . .

(Emphasis Added).

**Southwestern Bell Corp. Pension Benefit Plan ("Pension Plan") § 6.8.1**
In the event any benefit, which the Committee shall determine to be of the **same general character as a benefit provided by the Plan** . . . the excess only, if any, of the amount prescribed in the Plan above the amount of such payment . . . shall be payable under the Plan.

(Emphasis Added).

Having determined that the plans allow for benefits of the "same general character" to be offset, we must determine whether the plans provide their plan administrators with discretion to determine whether worker's compensation awards are of the "same general character" as benefits provided under the plans, or whether that question is simply one of contract interpretation subject to de novo review. We find that both the Disability Plan and Pension Plan provide the plan administrators with such discretion:

**Disability Plan § 5.4**
[T]he Claims Administrator . . shall have full and exclusive authority and discretion to grant and deny claims under the Plan, including the power to interpret the Plan and determine the eligibility of any person to . . . receive Benefits under the Plan.

**Pension Plan § 3.5.4**
The Committee and each organizational committee or subcommittee to whom claim determination or review authority has been delegated shall have full and exclusive authority and discretion to grant and deny claims under the SBCPBP, including the power to interpret the SBCPBP and

-10-

determine the eligibility of any individual to participate in and receive benefits under the SBCPBP.

Since we find that these plans provide the plan administrators with discretion to determine what constitute benefits of the "same general character," we are required to give deference to the plan administrators and only reverse their decisions for clear abuse of discretion. Woo, 144 F.3d at 1162. But see Firestone Tire & Rubber Co. v. Burch, 489 U.S. 101, 115 (1989) (holding that if the plans did not provide a plan administrator with discretion to interpret its terms that courts are required to review plan administrator's decisions de novo).

In determining whether an administrator abused his or her discretion in the interpretation of an employee benefit plan, "we may not find the interpretation invalid merely because we disagree with it, but only if it is unreasonable." Hutchins v. Champion Intern. Corp., 110 F.3d 1341, 1344 (8th Cir. 1997). As the Hutchins court explained, we look at five factors to determine whether a plan administrator's interpretation was reasonable:

1) whether the interpretation is consistent with the goals of the plan;
2) whether the interpretation renders any language in the plan meaningless or makes the plan internally inconsistent;
3) whether the interpretation conflicts with ERISA;
4) whether the interpretation has been consistent; and
5) whether the interpretation is contrary to the clear language of the plan.

Id. (citing Finely v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992)). The district court applied these five factors when deciding that the "same general character" determination was not an abuse of discretion. We agree with the district court's application of these factors as they relate to the worker's compensation award that Leonard actually received, i.e., that portion

of the award not used to pay attorneys' fees and costs related to the award. We see no reason to repeat that well reasoned analysis.

We do address, however, the substance of Leonard's argument that the type of award she received was not of the "same general character" as the benefits provided under the plans. Leonard argues that the worker's compensation award was for a Permanent Partial Disability, not for a Temporary Total Disability. Leonard argues that Permanent Partial Disability benefits are not for the loss of wages, which she argues is the purpose of the disability benefits provided by the Disability Plan and Pension Plan, but rather are intended as compensation for the permanent loss of the use of a body part. On the other hand, she claims that Temporary Total Disability benefits are for the loss of wages due to a disability, and therefore, only a Temporary Total Disability award may be of the "same general character" as the plan benefits.

While this argument has some logical merit, we reiterate that the proper standard of review for the plan administrators' decisions, in this case, is for abuse of discretion. We do not review the Disability Plan or Pension Plan administrators' decisions de novo. Southwestern Bell provided reasonable arguments to support the determination that the worker's compensation award is of the "same general character" as benefits under the Disability and Pension Plans. For example, Southwestern Bell argues that the purpose of the disability component of the plans is to provide employees with a minimal level of income or a "safety net" if they become disabled. Southwestern Bell does not act contrary to this goal by deciding to reduce Leonard's plan benefits by the amount received from other sources for the same injuries.

Additionally, we note that the plans provide notice to their participants that worker's compensation benefits would be offset against plan benefits. Both plans' summary plan descriptions stated that benefits may be reduced by

worker's compensation awards. The summary plan description for the Disability Plan provides: "[t]he Plan provides you with a [long term disability] benefit of 50% of your basic wage rate reduced by benefits you may receive from other sources of disability income, including: Workers' Compensation." Likewise the summary plan description for the Pension Plan provides: "If you receive a state Worker's Compensation benefit for the same disability for which you are receiving a disability pension, the disability pension amount will be reduced by the amount of the Workers' Compensation benefit." The summary plan descriptions in this case do not limit or contradict the explicit terms of the employee benefit plans. Rather, the summary plan descriptions merely provide plan participants with notice of what the plan administrators consider to be awards of the "same general character." We also note that the summary plan descriptions do not specify or limit the type of worker's compensation awards that the plans would characterize as of the "same general character." Considering these factors, we do not agree with Leonard that the plan administrators abused their discretion.

### V. Including Attorneys' Fees & Costs in the Offset

Although we agree with the district court that the plan administrators did not abuse their discretion in determining that the worker's compensation award was of the "same general character" as the benefits provided under the plans, we disagree with the district court that Southwestern Bell may offset the **entire** amount of Leonard's worker's compensation award from the plan benefits owed.

We first address the district court's conclusion that Leonard failed to properly raise the argument that, if offsets were allowed, the plans should not be permitted to offset the amount Leonard paid in attorneys' fees and costs to

-13-

obtain the worker's compensation award. In its September 11, 2002 order the district court stated that:

> Plaintiff now, for the first time, argues that she is entitled to summary judgment on the theory that attorney's fees in workers compensation proceedings are not of the same general character as plan benefits, and that the administrators abused their discretion in applying offsets in the amount of attorney's fees she paid as part of the worker compensation proceedings. Unfortunately for Plaintiff, it is too late to argue such a theory. She didn't raise it in either her initial or First Amended Complaint, and the time to amend ran out in January 2001.

Memorandum and Order at 9. The district court, however, stated to the contrary in its May 30, 2001 order. In that order the district court characterized one of Leonard's requests to include prohibiting Southwestern Bell from including in the offset attorneys' fees and costs. Memorandum and Order at 3 ("if this Court allows defendants to offset plan benefits with worker's compensation awards . . . [plaintiff requests that] any offsets are reduced to account for fees and expenses required to process and secure worker's compensation awards . . ."). We also note that Leonard made this request in paragraph 31 of her First Amended Complaint. We agree with Leonard that this issue was properly before the district court and should have been considered.

While it is true that administrators will be granted deference in making decisions when the plans provide for such discretion, that discretion is not unlimited. Indeed, the Finley factors were designed to help prevent unreasonable interpretations of employee benefit plans. In this instance, there are several reasons for determining that it was unreasonable for the plan administrators to include in the offset the amount Leonard paid in attorneys' fees and costs.

Southwestern Bell argues that the goal of these plans is to provide a safety net for employees, i.e., to provide a minimum amount of compensation for disabled employees. Allowing the plans to offset the portion of a worker's compensation award the employee paid in attorneys fees and costs to obtain that award contradicts this stated goal. Such a practice would place employees in worse positions than they would have been in had they not tried to obtain a worker's compensation award in the first place. This result would clearly violate the first Finley factor: that the interpretation be consistent with the goals of the plan. We note that concluding otherwise, i.e., concluding that the entire workers' compensation award–including the amount paid in attorneys' fees and costs–should be treated in the same manner, contradicts Southwestern Bell's main argument, namely, that it was not contrary to the goals of the plans to find Leonard's benefits of the "same general character" as the workers compensation.

Additionally, we are concerned with the inequitable results this practice could produce. Assuming that an employer is not self-insured for worker's compensation, Southwestern Bell's argument would result in a windfall to an employee benefit plan and a detriment to an employee when the employee elects to asserts rights under a worker's compensation law. The employer would be able to reduce benefits, dollar for dollar, for the **total** amount of the worker's compensation award, while the employee, who asserted statutory rights and obtained additional recovery, would be worse off, having only received the amount of the award remaining after payment of attorneys' fees and costs.

Given these two concerns, we are unwilling to allow an offset to include the amount a plan participant had to pay in attorneys' fees and costs to obtain non-plan benefits, absent an explicit statement in the plan that plan

-15-

administrators had discretion to treat fee and cost portions of such payments as the "same general character" as plan benefits. In this case, neither the Disability Plan nor the Pension Plan provided the administrator with this discretion.

We conclude that when an ERISA plan does not explicitly provide administrators with this discretion, the appropriate way to analyze offsets is set forth in Waller v. Hormel Foods Corp., 120 F.3d 138 (8th Cir. 1997). In Waller, we held that where "the Plan does not clothe its administrators with discretion to decide [attorneys' fees], it is left to the courts to construe the subrogation clause de novo." Id. at 141. Although Southwestern Bell tries to distinguish Waller as a subrogation case, we note that Waller concerned an ERISA plan's subrogation clause. The fact that the court in Waller was addressing an ERISA plan was an important factor in the decision to review the clause de novo. Thus, we decline to limit Waller's holding to only subrogation cases. As a result, we conclude that it was improper for the plan administrator of either the Disability Plan or the Pension Plan to include in the offset the amount Leonard paid in attorneys fees and costs.

## IV. Conclusion

We reverse the district court's decision only as it relates to attorneys' fees and costs involved in obtaining the $100,000 worker's compensation award. We affirm the district court decision in all other respects. We remand to the District Court to determine the appropriate amount of fees and costs to be awarded Leonard (to the extent they have already been offset from benefits she is owed), or to require Southwestern Bell to reduce the total amount of the offset.

-16-

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT